THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN DALE SMITH, Defendant-Appellant.

Fourth District No. 4—90—0176

Opinion filed March 7, 1991.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant was indicted on three counts of aggravated criminal sexual assault, one count of home invasion, and one count of armed robbery. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—14(a), 12—11, 18—2(a).) The three counts of aggravated criminal sexual assault each charged a different type of sexual penetration; *i.e.*, the first count alleged vaginal penetration, the second count alleged anal penetration, and the third alleged oral penetration. Following a jury trial, defendant was found guilty of all three counts of aggravated criminal sexual assault, and of home invasion and armed robbery. The trial court imposed a sentence of 30 years for each count of aggravated criminal sexual assault, to run concurrently but consecutive to the 20-year terms imposed for home invasion and armed robbery.

Defendant appeals his convictions and sentences for aggravated criminal sexual assault, arguing (1) during closing argument the prosecutor improperly stated (a) that either the victim or defendant was lying, and (b) his personal opinion of the case; (2) the trial court erred by giving a single issues instruction for the three counts of aggravated criminal sexual assault; and (3) the trial court failed to instruct the jury on the mental state required for aggravated criminal sexual assault.

We affirm.

Complainant was a 27-year-old graduate student at the University of Illinois when this incident occurred. She testified that around 1:30 a.m. on September 14, 1989, a man knocked at her apartment door, telling her that he was the apartment manager. She opened the door a little and the man pushed the door open and came in. Complainant identified this man as defendant. Defendant told her he was looking for someone named Tyrone who owed him money and had given him that address. Defendant looked through her apartment to make sure Tyrone was not there.

Complainant testified defendant told her to sit on the bed, and that they would wait until 2 a.m. when Tyrone should arrive. While waiting for Tyrone, defendant talked to complainant, and at some point produced a knife. Defendant also pulled a can of Budweiser from his jacket, took out a cigarette, and asked her to light it for him.

At 2 a.m., when Tyrone did not appear, defendant pointed the knife at complainant and told her to take her shirt off. Complainant testified she cried and told him to leave her alone. He told her to stop crying, not to shout, and he then removed her skirt. Defendant then undressed himself and told her to perform oral sex upon him. She tes-

tified he put his penis in her mouth. Complainant testified this lasted between 30 to 45 minutes and defendant was unable to get an erection. He then unsuccessfully attempted vaginal intercourse, and forced her to perform more oral sex. Complainant testified defendant then reached for some vegetable oil, which he used as a lubricant on both of them, lubricating her vagina and anus. After this, defendant successfully performed vaginal intercourse more than three times, and anal intercourse once.

Complainant testified defendant had his knife in his hand most of the time, and that once or twice he left it on the bed beside his hands. When defendant finished, he dressed and used a red flannel sheet to cover complainant. At this point, complainant could not see defendant, but testified she heard him going through her belongings. He found her Easy Answer card, asked her what her identification code was, and she told him. Defendant told her not to call the police, and she heard a sound like the receiver cord being ripped from the telephone. Defendant left with complainant's Easy Answer card at approximately 4:50 a.m. After he left, complainant found her phone was not working and went next door to call the police.

Officer Steve Shipley heard the dispatch notifying police that a sexual assault had occurred. Upon hearing the suspect took the victim's Easy Answer card, Officer Shipley went to the Easy Answer machine nearest to the victim's apartment. Upon arrival, he saw a man answering the description complainant provided of her assailant. Officer Shipley stopped the man and questioned him. He identified this man as the defendant. Defendant gave Officer Shipley his name and address, and at no time attempted to flee.

Officer Steven Douglas testified he arrived at the scene and asked defendant to empty his pockets. Defendant removed $87, including four $20 bills. Lying on the ground near the Easy Answer machine, Officer Douglas found a $20 bill and some receipts from the Easy Answer machine. Officer Larry Kearns testified that he found a Budweiser beer can 10 feet from the Easy Answer machine. Police found defendant's knife nearby.

Defendant's testimony about the events of the night in question conflicted with complainant's testimony. Defendant testified he was involved in a fight on that night and had a broken nose and swollen eyes. He then walked to his mother's apartment, found she was not home, and began walking across town to his apartment. He testified he was walking along Green Street and met complainant, whom he did not know at that time. Defendant stated complainant began the conversation by asking, "Who won?" referring to the fact defendant

had obviously been in a fight. She offered to clean up some of the blood on his face, and they went to her apartment.

Defendant stated complainant gave him a washrag to clean himself up with, and a can of Budweiser. Complainant then asked him if he had any marijuana or cocaine. Defendant did not have any of these drugs, but suggested that he possibly could get some from his old boss at a restaurant only a few blocks away. Defendant testified he went to the restaurant, his old boss was out, and he left him a note. Defendant then returned to complainant's apartment and she let him back in. Defendant testified they talked, watched a movie, and later began having sexual contact. Defendant testified at this point complainant took the vegetable oil off the counter, went into the bathroom, and applied it to her genital area. At no time did he touch the bottle of vegetable oil.

While engaging in the sexual contact, defendant stated a man knocked on complainant's door. She did not open the door, and an argument ensued between her and the visitor. Defendant admitted having oral sex and vaginal intercourse with complainant, but denied engaging in anal intercourse. After the visitor left, complainant began discussing drugs with defendant again. Defendant testified complainant gave him her Easy Answer card and they agreed he was to withdraw $100, and use it to possibly obtain some cocaine from other people he knew. He stated she gave him the personal identification number and instructions needed to use her card. After defendant withdrew the $100, he was to go back to her apartment and they were to go in complainant's car to find some cocaine.

Defendant testified he used complainant's Easy Answer card to withdraw $100 from the Easy Answer machine at Sixth and Green Streets. He stated he was heading for complainant's apartment when a car, which he recognized as an unmarked police car, turned into a parking lot near the Easy Answer machine. An officer shined his spotlight on defendant, and he then turned and walked toward the police officer. Defendant testified when he saw the police car coming toward him he feared he had been set up by complainant, and that possibly she was an undercover police officer setting him up for a drug bust. Because of this fear, defendant threw down the Easy Answer card and the knife. After the officer had defendant empty his pockets, defendant agreed to participate in a showup. Complainant positively identified defendant, and police placed him under arrest.

Detective Donald Atkins testified he interviewed defendant at the police station on the morning of September 14, 1989. During this interview, defendant told Detective Atkins he did not know complain-

ant, had never been at her apartment or had intercourse with her, and had not used the Easy Answer machine. He also told Detective Atkins that he slept in the hallway outside his mother's apartment for a while on the night in question.

A waitress at the restaurant confirmed defendant did stop by on the night of the incident, and left a note for his old boss. Testimony about the physical condition of the apartment revealed that human hairs and synthetic fibers found at the apartment were consistent with defendant's hair and clothing. Testimony also revealed some semen identified on complainant's bed sheet could not have originated from defendant. However, other seminal material on the bedspread and pillowcase could have originated from defendant. Eric Young, a forensic scientist with the Illinois State Police, testified he found oil residue from a swabbing of defendant's pubic hair and genital area. The emergency room nurse testified she observed oil residue on the genital area and pubic hairs of complainant. There was no evidence of oil residue in or about the anus of complainant.

Dr. Lisa Rodgers, the emergency physician who examined complainant the morning following the incident, testified she had no bruises or physical distress upon her body. She testified complainant did have mild tenderness around the anus. Dr. Rodgers also testified complainant was trembling, teary, and quite emotionally upset when she examined her.

Upon this evidence, the jury returned guilty verdicts on all charges. This appeal followed.

### I. CLOSING ARGUMENT

Defendant first challenges comments the prosecutor made during closing argument that either complainant or defendant was lying. During his initial closing argument, the prosecutor stated:

> "Well, today, you heard the Defendant's version. Credibility of witnesses. And today, you have to decide who's telling the truth and who's lying. There's no easy way. There's no nice way, no discreet way to put this. *Either [the complainant's] lying, or the Defendant's lying.* You can't say, well, she may have been mistaken, her perception may have been altered. No. *Either [the complainant] got on this witness stand and told you the absolute truth about what happened to her on the 14th of September, or she lied.* She completely and absolutely made it up." (Emphasis added.)

In rebuttal closing argument, the prosecutor stated:

"He's guilty. He's guilty of Home Invasion. He's guilty of Armed Robbery. He's guilty of Aggravated Criminal Sexual Assault. *Either [the complainant's] telling the truth, or she's lying.* I don't know what more she could have done. I don't know what else you needed to have added to her testimony unless, of course, you're going to require some injury. *** [The complainant's] telling you the truth. This Defendant is guilty." (Emphasis added.)

Defendant argues that in these comments the prosecutor misstated the law by telling the jury that in order to acquit, it had to find the State's witnesses were lying. He argues this distorts the burden of proof by requiring the jury to find the State's witnesses lied in order to acquit him.

■■ ■ It should initially be noted defendant failed to object to these remarks at trial and did not raise this issue in a post-trial motion. In order to preserve an alleged error for appeal, a defendant must both object to the error at trial and in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Defendant has done neither and has thus waived any consideration of this issue.

■■ Despite this, defendant argues the remarks constitute plain error, an exception to the general rule of waiver. Defendant cites Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)), which states: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The plain error rule is applied in instances of error when (1) the evidence is closely balanced or (2) when the error was of such magnitude that defendant was denied a fair trial. *People v. Whitehead* (1987), 116 Ill. 2d 425, 448, 508 N.E.2d 687, 695, *cert. denied* (1987), 484 U.S. 933, 98 L. Ed. 2d 266, 108 S. Ct. 307.

■■ The evidence is not so closely balanced in this case as to warrant application of the plain error rule. Defendant's story, when coupled with his suspicious behavior at the Easy Answer machine and his initial false statement to police, does not constitute strong evidence of his innocence in opposition to complainant's testimony. Contrary to defendant's denial of anal penetration, the medical testimony revealed some mild swelling around the complainant's anus. Because of the complainant's testimony and positive identification, defendant's inconsistent stories of what happened, and the corroborating medical testimony, the evidence is not closely balanced.

Neither did the prosecutor's comments deny defendant a fair trial; rather, the prosecutor simply commented on the significant amount of conflict in their testimony. The comments came at the end of his lengthy summary of the evidence and did not misstate the law because he never stated the jury must find the State's witnesses lied in order to acquit defendant.

■■ Moreover, the jury was instructed that closing arguments made by counsel are not evidence, and any argument or statement made by counsel not based on the evidence should be disregarded. (Illinois Pattern Jury Instructions, Criminal, No. 1.03 (2d ed. 1981).) Such instructions have been held to cure any prejudice to the defendant because of the prosecutor's improper remarks. (*People v. Lawler* (1991), 142 Ill. 2d 548.) Thus, any error in the prosecutor's remarks was cured by this instruction. *Lawler*, 142 Ill. 2d 548.

■■ ■ The prosecutor's comments were proper. It is generally improper for a prosecutor to tell jurors that in order to acquit the defendant they must find all of the State's witnesses are lying. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 888-89, 439 N.E.2d 1011, 1018.) Courts hold these statements improper because they misstate the law by suggesting the jury must find the State's witnesses are lying in order to acquit the defendant, when the jury may acquit simply because the State has not proved its case beyond a reasonable doubt. (*People v. Cole* (1980), 80 Ill. App. 3d 1105, 1108, 400 N.E.2d 931, 933-34.) In some cases, a jury may fully believe the testimony of *some* of the State's witnesses, yet still acquit the defendant. *Cole*, 80 Ill. App. 3d at 1108, 400 N.E.2d at 933-34.

Despite this general rule, such argument may be deemed proper when it can be characterized as comment on, or discussion of, the credibility of the defendant and other witnesses, and when based on the evidence and reasonable inferences drawn therefrom. (*Cole*, 80 Ill. App. 3d at 1107-08, 400 N.E.2d at 933.) Such comment is proper argument, *i.e.*, inferences based on the evidence, in cases where the defendant's testimony contradicts the testimony of significant State's witnesses. *People v. Pegram* (1987), 152 Ill. App. 3d 656, 504 N.E.2d 958 (prosecutor's statement that either the defendant or the victim lied held not to be plain error); *People v. Thomas* (1988), 172 Ill. App. 3d 172, 179-80, 526 N.E.2d 467, 472 (prosecutor's remarks that either defendant or the police officers had to be lying held proper argument because of direct conflict in the testimony of the police officers and that of the defendant).

Some courts distinguish when the contradiction could possibly be due to a witness' mistake, as opposed to when the contradiction was

almost certainly due to a witness lying. In *Cole,* the prosecutor told the jury in closing argument that in order to believe the defense witnesses, it must find each of the State's witnesses lied. (*Cole,* 80 Ill. App. 3d at 1107, 400 N.E.2d at 932.) Identification was a contested issue. Since the witnesses may simply have been mistaken instead of lying, the jury could acquit defendant without finding the State's witnesses lied. Because of this, the court held the prosecutor's statement to be plain error. *Cole,* 80 Ill. App. 3d at 1108, 400 N.E.2d at 933.

In *People v. Roman* (1981), 98 Ill. App. 3d 703, 705-06, 424 N.E.2d 794, 797, defendant's testimony contradicted the testimony of the victim, and in closing argument the prosecutor stated that in order to believe defendant the jury would have to find the State's witnesses were lying. *Roman* distinguished these remarks from the remarks in *Cole,* since identification was not an issue in the case. The victim and defendant simply gave contradictory versions of the events in question, and unlike *Cole,* this was not a situation where the witnesses could easily be mistaken. Based on this distinction, the *Roman* court refused to find plain error as the comments were not lengthy and the prosecutor did not put his credibility behind the State's witnesses. *Roman,* 98 Ill. App. 3d at 707, 424 N.E.2d at 798.

We likewise find *Cole* inapposite. First, contrary to defendant's assertions, at no point did the prosecutor state that in order acquit defendant, the jury must conclude the State's witnesses were lying. Instead, the main theme of the prosecutor's remarks was that either complainant or defendant was lying. Thus, the prosecutor did not misstate the law.

Second, there was a significant amount of contradiction between complainant's testimony and that of defendant, in a case largely resting on credibility. Indeed, defense counsel acknowledged in closing argument "you've heard two diametrically different stories." While defendant admitted some sexual contact occurred between him and complainant, their versions of what happened that night directly conflicted.

When reviewing the evidence, it seems a reasonable inference, if not the only logical one, that either the complainant or the defendant was lying. The two versions of what occurred that night simply cannot be reconciled. Furthermore, unlike *Cole,* these are not matters about which a witness may easily be mistaken. Accordingly, the remarks were proper argument.

Defendant next contends the prosecutor improperly stated his personal opinion about the quality of the case against defendant, stating in closing argument:

*"Pretty good case.* Not bad. Got a positive I.D. Got him identified to a 'T' right down to his greasy crotch, [got] pubic hairs consistent with his all over the apartment, got him using [the complainant's] card at the easy answer machine[,] *pretty good case.* And his total and complete denial of anything." (Emphasis added.)

The prosecutor further stated in rebuttal: "So see, we have to prove it beyond a reasonable doubt. As I indicated earlier, *not a bad case.*" (Emphasis added.)

Defendant contends the prosecutor went beyond arguing acceptable inferences from the evidence, thereby usurping the jury's fact-finding function. The State argues defendant has waived this issue by failing to object at trial or by post-trial motion. On the merits, the State responds these remarks were proper because they were based on facts in evidence as, when the prosecutor first commented he had a "pretty good case," the remark was preceded by a recitation of the facts and evidence, and followed by a summary of these facts. The prosecutor's rebuttal comment was likewise after he reviewed the facts in evidence.

■ Defendant waived any right to challenge the prosecutor's remarks because he did not object to them at trial and did not file a post-trial motion. (*Enoch,* 122 Ill. 2d at 186, 522 N.E.2d at 1130.) As with our earlier discussion, these remarks similarly do not rise to the level of plain error.

■■ ■ Moreover, on the merits, we find the prosecutor's comments were within the range of proper argument. It is generally improper for a prosecutor to express his or her personal opinion of the case (*People v. Emerson* (1987), 122 Ill. 2d 411, 434, 522 N.E.2d 1109, 1118, *cert. denied* (1988), 488 U.S. 900, 102 L. Ed. 2d 235, 109 S. Ct. 246) because, *e.g.,* the jury may rely on the prosecutor's evaluation of the evidence and abdicate its fact-finding responsibility.

However, comments on the strength of the case, based on the evidence, are permissible. (*Emerson,* 122 Ill. 2d at 434, 522 N.E.2d at 1118; *People v. Yates* (1983), 98 Ill. 2d 502, 532, 456 N.E.2d 1369, 1384.) In *Emerson,* the prosecutor commented " '[a]*nd we know Robert Ray was telling you the truth.* We could tell. You tell by the way the man told you what happened that he was telling you the truth.' " (Emphasis in original.) (*Emerson,* 122 Ill. 2d at 434, 522 N.E.2d at 1118.) The court held this was fair comment on the evidence, noting the prosecutor simply emphasized the favorable impression created by the witness' demeanor. *Emerson,* 122 Ill. 2d at 434-35, 522 N.E.2d at 1118.

The prosecutor's remarks were proper comments on the strength of the case because they were based on the evidence.

## II. CHALLENGES TO GIVING A SINGLE ISSUES INSTRUCTION ON AGGRAVATED CRIMINAL SEXUAL ASSAULT WHERE DEFENDANT IS CHARGED WITH THREE COUNTS OF THE OFFENSE

Defendant next alleges error because the jury instructions included only one "general" issues instruction for the three charges of aggravated criminal sexual assault, rather than three separate issues instructions, each modified to specify the act of sexual penetration charged in the three counts of aggravated criminal sexual assault.

The jury instructions given included the definitional instruction for aggravated criminal sexual assault:

> "A person commits the offense of aggravated criminal sexual assault when he commits criminal sexual assault and displays a dangerous weapon."

(See Illinois Pattern Jury Instructions, Criminal, No. 11.33, at 171 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d).) Also given was the following definitional instruction for criminal sexual assault:

> "A person commits the offense of criminal sexual assault when he commits an act of sexual penetration upon the victim by the use of force or threat of force."

(See IPI Criminal 2d No. 11.31, at 168 (Supp. 1989).) The court gave the following definitional instruction for sexual penetration:

> "The term 'Sexual penetration' means any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio, or anal penetration. Evidence of the emission of semen is not required to prove sexual penetration." See IPI Criminal 2d No. 11.65, at 192 (Supp. 1989).

These were followed by a single issues instruction on aggravated criminal sexual assault:

> "To sustain the charge of aggravated criminal sexual assault, the State must prove the following propositions:
>
> *First*: That the defendant committed acts of sexual penetration upon [the complainant]; and
>
> *Second*: That the acts were committed by the use of force or threat of force; and
>
> *Third*: That the defendant displayed a dangerous weapon; and

*Fourth*: That [the complainant] did not consent to the acts of sexual penetration.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal 2d No. 11.34, at 172-74 (Supp. 1989).

In giving the concluding instruction, the court then distinguished the different ways in which the sexual penetration was alleged, stating:

"The defendant is also charged in different ways with the offense of aggravated criminal sexual assault. You will receive two (2) forms of verdict pertaining to each particular way that the offense of aggravated criminal sexual assault is charged. As to each particular way the offense of aggravated criminal sexual assault is charged you will be provided with both a 'not guilty' and 'guilty' form of verdict. From these two verdict forms as to each particular way that the offense of aggravated criminal sexual assault is charged, you should select the one verdict form that reflects your verdict and sign it as I have stated."

See IPI Criminal 2d No. 26.01, at 320-21 (Supp. 1989).

The court provided the jury six separate verdict forms for the aggravated criminal sexual assault charges, a "guilty" and "not guilty" form for each charge specifying an act of oral, or vaginal, or anal sexual penetration.

Initially, defendant has waived any argument on this issue because he failed to object to these jury instructions at trial, tender alternate instructions, and raise the issue in a post-trial motion. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130; *People v. Huckstead* (1982), 91 Ill. 2d 536, 543, 440 N.E.2d 1248, 1251.) The purpose of requiring a defendant not only to object to a particular instruction, but also to tender proper instructions, is to afford the trial court the opportunity to correct any errors in the instructions before they are actually given. (*People v. Burns* (1986), 144 Ill. App. 3d 345, 355, 494 N.E.2d 872, 880.) Here, the circuit court never had the opportunity to consider the argument now advanced by defendant.

Nevertheless, fundamental fairness requires that certain basic instructions be given. (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 429 N.E.2d 861.) Instructions on the essential elements of the offense are

among these basic instructions, and the trial court must see that they are given. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) Accordingly, we address each of defendant's contentions in turn.

## A. ALLEGED WINSHIP ERROR: WHETHER THE JURY FOUND DEFENDANT GUILTY OF EACH ELEMENT OF EACH CHARGE BEYOND A REASONABLE DOUBT

Defendant alleges the instructions did not require the jury to find each element *of each charge* of aggravated criminal sexual assault beyond a reasonable doubt, in violation of *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068. He contends three issues instructions for aggravated criminal sexual assault—each modified to specify the type of sexual penetration charged, just as the verdict forms were modified—were necessary to satisfy the requirements of *Winship*. This appears to be an issue of first impression.

Examining the jury instructions as a whole, it is clear they complied with *Winship*, and three separate issues instructions were not required to inform the jury it must find each element of each charge of aggravated criminal sexual assault beyond a reasonable doubt. The court instructed the jury on the elements of the offense, and that it must find each of these elements beyond a reasonable doubt in order to find defendant guilty. The court explained that defendant was charged with different ways of committing aggravated criminal sexual assault, and that the jury would be provided verdict forms "pertaining to each particular way that the offense *** is charged." The verdict forms in fact specified the act of sexual penetration alleged in each count. It is unclear how a single issues instruction for three counts of aggravated criminal sexual assault violated *Winship*, or how three separate issues instructions would have added to the jury's understanding.

 It is also important to note that the *type* of sexual penetration has been held not to be an element of the offense of aggravated criminal sexual assault by the Third District Appellate Court in *People v. Tanner* (1986), 142 Ill. App. 3d 165, 168-69, 491 N.E.2d 776, 778 (State not required to prove the type of sexual penetration alleged in the indictment), and by the First District Appellate Court in *People v. Webster* (1988), 175 Ill. App. 3d 119, 131, 529 N.E.2d 741, *appeal denied* (1989), 124 Ill. 2d 561, 535 N.E.2d 920, and *People v. Jimenez* (1989), 191 Ill. App. 3d 13, 547 N.E.2d 616, *appeal denied* (1990), 131 Ill. 2d 563, 553 N.E.2d 399.

 We agree with *Tanner* and *Webster*. The type of sexual penetration alleged is not an element of the offense of aggravated criminal

sexual assault, and defendant is not entitled to separate issues instructions distinguishing the type of sexual penetration alleged in the indictment.

## B. ALLEGED VIOLATION OF THE UNANIMITY REQUIREMENT

■■■ Defendant also alleges the issues instruction violated the unanimity requirement of Illinois law, because it failed to require unanimous agreement beyond a reasonable doubt as to which specific act the defendant performed under each charge of aggravated criminal sexual assault. Whether the single issues instruction in this case adequately informed the jury it must be unanimous as to each count of aggravated criminal sexual assault also appears to be an issue of first impression. In *People v. Regains* (1989), 187 Ill. App. 3d 713, 543 N.E.2d 1090, *appeal denied* (1989), 128 Ill. 2d 670, 548 N.E.2d 1076, the appellate court addressed a somewhat similar issue raised with respect to lack of specificity in the verdict forms. There, defendant was charged with two counts of aggravated indecent liberties with a child and two counts of aggravated criminal sexual assault. (*Regains*, 187 Ill. App. 3d at 714, 543 N.E.2d at 1091.) The counts of aggravated criminal sexual assault were distinguished by the type of sexual penetration, oral and vaginal. The jury returned general verdicts finding defendant guilty of aggravated indecent liberties with a child and aggravated criminal sexual assault. Defendant argued the verdict forms failed to distinguish between the charges of oral and vaginal penetration. (*Regains*, 187 Ill. App. 3d at 715, 543 N.E.2d at 523.) He claimed this deprived him of his right to a unanimous verdict because it did not require the jury to unanimously agree on which specific act it found the defendant committed. The *Regains* court found defendant waived any argument on the general nature of the verdict forms by adopting the character of the forms he tendered on the individual offense of aggravated criminal sexual abuse. Hence, such lack of specificity in the verdict forms did not amount to reversible error.

Unlike *Regains*, the verdict forms here specified the type of penetration alleged in each count. The concluding instruction also informed the jury that defendant was charged with different ways in which the offense was committed. As stated, the trial court did not err.

## C. ALLEGED NONCOMPLIANCE WITH IPI COMMITTEE RECOMMENDATIONS

Defendant next argues the instructions did not comport with the committee recommendations of IPI Criminal 2d No. 26.01 (Supp. 1989), the "concluding" instruction. The committee note to IPI Crimi-

nal 2d No. 26.01 (Supp. 1989) recommends that when multiple counts of a single offense *that can be charged with different elements* are so charged, the court may use paragraph three of the concluding instruction and may also expand the issues instruction to specify the way in which the particular offense was committed:

"When a defendant is charged in multiple counts with an offense that can be charged with different elements, paragraph [3] may be used if the court believes its use will assist the jury in deciding the issues. An example would be a defendant charged in three separate counts with aggravated battery (Ch. 38, Section 12—4) based upon his alleged (1) causing great bodily harm, (2) causing bodily harm to a police officer, and (3) committing a battery upon a public way. Each of these charges is called aggravated battery, but each contains an element that must be proved beyond a reasonable doubt that neither of the other charges contains. Accordingly, a court may choose to distinguish on the verdict forms between the ways in which aggravated battery can be committed. *If the court so chooses, then the opening sentence of the issues instructions as well as the guilty and not guilty verdict forms should be expanded to distinguish among the different ways a particular charge is before the injury.* [Emphasis added.] Examples are the following:

(1) 'To sustain the charge of aggravated battery *causing great bodily harm*, ...' (opening clause of an issues instruction); * * *

(2) 'To sustain the charge of aggravated battery *upon a police officer*, ...' (opening clause of an issues instruction); * * *

(3) 'To sustain the charge of aggravated battery *upon a public way*, ...' (opening clause of an issues instruction) * * *." (Emphasis in original unless otherwise noted.) (IPI Criminal 2d No. 26.01, Committee Note, at 321-22 (Supp. 1989).)

Paragraph three provides:

"[3] The defendant[s] [(is) (are)] charged in different ways with the offense of _____. You will receive two forms of verdict pertaining to each particular way that the offense of _____ is charged. As to each particular way the offense of _____ is charged [and as to each defendant], you will be provided with both a 'not guilty' and 'guilty' form of verdict. From these two verdict forms as to each particular way that the offense of _____ is charged, you should select the one verdict form that reflects your verdict [as to each defendant] and sign it as I have stated. Do not write on the other verdict

form [as to that defendant]. Sign only one verdict form as to each particular way that the offense of ___ is charged [as to each defendant]." (IPI Criminal 2d No. 26.01, at 321 (Supp. 1989).)

As noted above, the jurors were given paragraph three, informing them defendant was charged with committing aggravated criminal sexual assault three different ways.

Defendant argues that because the trial court distinguished the different charges of aggravated criminal assault by giving paragraph three of the concluding instruction and by specifying the acts of penetration in verdict forms—but failed to expand the opening sentence of three separate issues instructions to specify the type of sexual penetration—the issues instruction did not comport with the committee's recommendation.

■■■ This argument has no merit. It is clear from the committee note that the suggestion for an expanded issues instruction has no application here. First, IPI Criminal 2d No. 26.01 (Supp. 1989) is the pattern concluding instruction, not an instruction specific to this offense. The committee note's suggestion of expanding the opening sentence of the issues instruction addresses itself to circumstances where "a defendant is charged in multiple counts with an offense that can be charged with different elements." (IPI Criminal 2d No. 26.01, Committee Note, at 321 (Supp. 1989).) Defendant, by contrast, was not charged in multiple counts *with an offense with different elements*. He was charged with multiple counts of aggravated criminal sexual assault, all with *identical* elements, one being "sexual penetration." That the charges distinguished between separate *acts* of sexual penetration is of no moment to this issue since any act within the statutory definition of sexual penetration fulfills that element of the charge.

Second, the committee emphasized in the same note that "distinguishing among the various ways in which a given charge is brought is not required by law." (IPI Criminal 2d No. 26.01, Committee Note, at 322 (Supp. 1989).) The note cited *People v. Travis* (1988), 170 Ill. App. 3d 873, 525 N.E.2d 1137, *cert. denied* (1989), 489 U.S. 1024, 103 L. Ed. 2d 209, 109 S. Ct. 1149, for the proposition that the jury need only be unanimous with respect to the defendant's guilt or innocence, and need not be unanimous as to the alternate ways in which the crime could have been committed. The committee note concludes that while distinguishing among the ways a given charge was committed, *i.e.*, giving paragraph three of the concluding instruction, is not required by law, a court has the discretion to do so when it believes this

would assist the jury. (IPI Criminal 2d No. 26.01, Committee Note, at 323 (Supp. 1989).) Here, expansion of the opening sentence of separate issues instructions was not required because the court clearly instructed the jury that the counts of aggravated criminal sexual assault were distinguished by the type of sexual penetration alleged, and that the verdict forms similarly distinguished the charges. Furthermore, the committee note on the issues instruction for this offense, IPI Criminal 2d No. 11.34 (Supp. 1989), says nothing about the need to modify or expand the issues instruction in a case such as this. IPI Criminal 2d No. 11.34, Committee Note, at 174 (Supp. 1989).

### III. FAILURE TO SPECIFY A MENTAL STATE IN JURY INSTRUCTIONS ON AGGRAVATED CRIMINAL SEXUAL ASSAULT

Defendant finally argues the trial court erred because the instructions omitted a mental state for the charges of aggravated criminal sexual assault. He maintains this omission violates State and Federal constitutional requirements that the State is required to prove every fact necessary to the offense beyond a reasonable doubt, thereby violating the due process clause of the fourteenth amendment to the United States Constitution, citing *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450, and *Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965. He asks this court to overrule the majority's holding in *People v. Burton* (1990), 201 Ill. App. 3d 116, 558 N.E.2d 1369 (Steigmann, J., concurring in part and dissenting in part), *appeal denied* (1990), 135 Ill. 2d 560.

We initially find defendant has waived this issue for appellate review. Defendant failed to object to the instruction or tender alternate instructions, and failed to raise this issue in a post-trial motion. (*Enoch*, 122 Ill. 2d at 187-88, 522 N.E.2d at 1130.) We further find the instructions given did not constitute plain error. *Huckstead*, 91 Ill. 2d at 543-44, 440 N.E.2d at 1252.

Moreover, we conclude the instructions given, which followed the pattern IPI Criminal 2d instructions, were proper.

*Burton* involved a charge of aggravated criminal sexual assault, and the defendant there objected that the jury instructions defining aggravated criminal sexual assault and sexual penetration and the issues instruction on aggravated criminal sexual assault (IPI Criminal 2d Nos. 11.33, 11.65, 11.35 (Supp. 1989)) did not specify the mental state the State was required to prove. (*Burton*, 201 Ill. App. 3d at 117, 558 N.E.2d at 1370.) Although the aggravated criminal sexual assault statute does not specify the mental state, one is implied, based on section 4—3 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat.

1985, ch. 38, par. 4—3). *People v. Terrell* (1989), 132 Ill. 2d 178, 209-10, 547 N.E.2d 145, 158, *cert. denied* (1990), 495 U.S. 959, 109 L. Ed. 2d 749, 110 S. Ct. 2567.

■■■ *Burton* clearly holds a defendant charged with aggravated criminal sexual assault is not entitled to jury instructions specifying a mental state. (*Burton*, 201 Ill. App. 3d at 122, 558 N.E.2d at 1374.) Accordingly, we affirm *Burton*'s holding that the jury need not be instructed on the mental state implied to be an element of the offense of aggravated criminal sexual assault.

The jury instructions at issue here were proper.

The circuit court of Champaign County is affirmed.

Affirmed.

LUND, P.J., and GREEN, J., concur.