NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230109-U

Order filed May 20, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0109 Circuit No. 19-CF-133 |
| | ) | |
| PATRICK W. BEECH, | ) ) | Honorable Daniel P. Guerin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice McDade and Justice Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: (1) Evidence was sufficient to prove defendant guilty of attempted criminal sexual assault; and (2) trial court did not abuse its discretion in sentencing defendant to three-year minimum term of imprisonment rather than probation.

¶ 2    Defendant, Patrick W. Beech, was indicted on six counts of aggravated criminal sexual assault, attempted aggravated criminal sexual assault, aggravated criminal sexual abuse, criminal sexual assault, attempted criminal sexual assault, and criminal sexual abuse. Each count charged a different type of sexual penetration (vaginal and anal) by force and alleged that defendant did so

with and without causing bodily harm to the victim. Following a bench trial, the court found defendant guilty of only one count, attempted criminal sexual assault, and sentenced him to three years in prison. Defendant appeals, claiming (1) the evidence was insufficient to prove him guilty of the offense for which he was convicted, and (2) the court erred in sentencing him to a term of imprisonment rather than probation. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4        On February 19, 2019, defendant was charged by indictment with six counts of sexual misconduct based on allegations that he sexually assaulted and abused the victim, B.H., at a hotel in Du Page County between July 27 and July 28, 2018. Count 1 alleged that defendant committed aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2018)), asserting that, by the use of force, he knowingly made contact between his penis and the victim's vagina and caused bodily harm to the victim. Count 2 alleged attempted aggravated criminal sexual assault (*id.* §§ 8-4(a), 11-1.30(a)(2)), claiming that he placed his penis near the victim's anus while attempting to commit aggravated criminal sexual assault and caused bodily harm. Count 3 charged aggravated criminal sexual abuse (*id.* § 11-1.60(a)(2)) in that, by the use of force, defendant knowingly transferred semen onto the victim for sexual gratification and caused bodily harm. Count 4 alleged criminal sexual assault (*id.* § 11-1.20(a)(1)), asserting that, by the use of force, defendant committed an act of sexual penetration to the victim by knowingly making contact between his penis and the victim's vagina. Count 5 charged attempted criminal sexual assault (*id.* §§ 8-4(a), 11-1.20(a)(1)), claiming that defendant placed his penis near the victim's anus while attempting to commit criminal sexual assault. Last, count 6 alleged criminal sexual abuse (*id.* § 11-1.50(a)(1)) in that, by the use of force, defendant knowingly transferred semen onto the victim for sexual gratification.

2

¶ 5    At trial, B.H. testified that in the summer of 2018 both she and defendant lived in Minnesota and worked for Cutco, a direct sales cutlery company that employed mostly college students. She was 18 years old at the time, and defendant, who was 19, was her mentor. On July 24, 2018, they spoke on the phone about a sales conference they were both attending that upcoming weekend. Defendant told B.H. that there would be alcohol at the conference and asked her how she felt about that. B.H. told him that she did not drink.

¶ 6    On July 27, 2018, defendant and B.H. attended a two-day sales conference at Pheasant Run in St. Charles, Illinois. After dinner that evening, defendant, B.H., and other members of their sales team were drinking in the hotel parking lot before going out. B.H. consumed three shots of rum before leaving with the group.

¶ 7    At 12:30 a.m., B.H. returned to a hotel room with defendant and several other male co-workers. Defendant and B.H. were both drinking. B.H. started to feel sick and she was tired, so she laid down on the bed. Co-worker Ryan Kennedy and defendant laid down on each side of her. Ryan and defendant complimented B.H., telling her that she was pretty and had nice breasts. Defendant took Kennedy's hand and put it on B.H.'s breast. B.H. "laughed it off" and pushed Kennedy's hand away. Defendant then put his hand under B.H.'s buttocks. B.H. said, "No," and moved away. Defendant continued to grab the inside of her thigh and again B.H. said, "Stop." Defendant did not stop, and B.H. "eventually just stopped saying anything."

¶ 8    After a while, defendant asked B.H. if she wanted to leave, and B.H. said, "Yes." They went to defendant's hotel room on the first floor. Other people were asleep in the room. Defendant took B.H. by the hand, and they went into the bathroom. Defendant turned and locked the door. He complimented B.H. again, calling her beautiful. She "kind of laughed it off" and reminded him that he had a girlfriend. Defendant pulled B.H. in and kissed her. She moved back against the

3

counter and pulled back her head, but she was not able to stop defendant. He tried to pull her sweater off, but she resisted. He then took off her bra. B.H. kept pushing defendant's hands away. She tried to pick up her clothes and leave, but she could not leave because defendant was standing in front of the door and it was still locked. Defendant grabbed B.H. by the neck and lifted her onto the bathroom counter. He tried to pull her pants off, but B.H. kicked his hands away, telling him to stop. Despite her protests, defendant was able to remove her pants.

¶ 9        At that point, defendant and B.H. were both naked. B.H. jumped off the counter, and defendant pushed her onto the floor. He wanted B.H. to perform oral sex on him. She refused. Defendant then pushed her, and she hit her head on something. She did not know if it was the tub or the floor. She just remembered that it hurt. At that point, she started feeling nauseous. She felt "out of it" and "couldn't get [her] bearings." When she regained awareness of her surroundings, defendant was spreading her legs and inserting his penis into her vagina. He continued for five or ten minutes. He eventually stopped. B.H. grabbed her clothes and tried to leave again, but defendant stopped her and grabbed her neck. When asked to describe how he grabbed her, B.H. stated: "He took his hand and grabbed the side of my neck to kind of keep me stable to try to stop me from leaving."

¶ 10       Defendant then pushed B.H. up against the counter as she was facing the mirror. B.H. could feel defendant's penis against her back. Defendant put one hand on the back of her neck and pushed his other hand and forearm on her back as he tried to insert his penis into her anus. B.H. testified: "I could feel part of his, like, abdomen on my back as well as I what I believe[d] to be his penis; and he tried to insert it into my anus." She felt pressure on her anus, but he was unable to insert it inside her anus. She tried to scream but her voice was sore from talking at the conference. She

4

ended up on the floor again, where defendant masturbated and ejaculated on her. As soon as he walked out of the bathroom, she got dressed and left.

¶ 11    As B.H. walked down the hallway, she encountered defendant. He apologized and said he was too drunk and did not mean for anything to happen. B.H. was upset. She went into the bathroom in another hotel room and locked the door. While sitting in the bathroom, B.H. sent defendant a Snapchat message that said, "Please leave, I don't want to talk to you right now." Defendant responded:

> "I didn't mean any bad intentions…I should have asked…I'm so so very sorry
>
> If you want I'll quit after the conference then you won't have to see me again
>
> I'm so sorry
>
> I wasn't as clear in the head as I think I am
>
> I understand how much you hate me now
>
> Have a good night
>
> I take full responsibility of my actions. I apologize once more"

B.H. identified a copy of the message as People's Exhibit No. 8. It was admitted and published to the court over defendant's objection.

¶ 12    After B.H. made it back to her room, she told her manager, Paige Erickson, that she was "taken advantage of" and "raped" by defendant. Then, she took a shower and tried to get ready for the second day of the conference. Defendant tried to talk to her in the ballroom before the first meeting, but Paige blocked him. They arrived back in St. Paul Minnesota late in the evening on July 28. B.H. testified that she never told defendant she wanted to have sex with him and did not say "yes" to any of his sexual advances.

5

¶ 13    On Monday morning, July 30, B.H. drove to work and met Paige in the parking lot. Paige gave her a letter written by the defendant. B.H. identified People's Exhibit No. 9 as the handwritten letter she received from Paige that morning. After talking to Paige, she went home and told her mother what had happened. They went to the hospital where she spoke with a nurse who conducted an exam.

¶ 14    Nurse Keri Cotton, a sexual assault nurse examiner, examined B.H. at United Hospital in St. Paul, Minnesota on July 30, 2018. B.H. arrived for the exam with her mother and sister. B.H. told Nurse Cotton that defendant raped her, that he pushed her into the bathroom counter and tore off her sweatshirt, and that penal-vaginal penetration was involved. B.H. told her that defendant tried anal penetration as well, but she kept moving. In her chart, Nurse Cotton noted that B.H. said defendant choked her with his hand on her neck. She asked if B.H. experienced any bleeding, and B.H. stated that she had some dark brown spotting after the incident. She then asked if defendant strangled or choked her. B.H. responded, "Yes," and said that he choked her at least five times on the right side of her neck.

¶ 15    Nurse Cotton also performed a sexual assault kit exam. She did not note any vaginal trauma during the exam. She explained no vaginal trauma was still consistent with vaginal penetration because the vagina has an excellent blood supply and heals rapidly. Given that it had been two days, the lack of visible trauma was unremarkable. She took swabs of B.H.'s vagina for testing. She did not take a swab of B.H.'s anus because the assault was "just an attempt" and B.H. had showered. She did not notice any trauma around B.H.'s anus. During the physical exam, B.H. complained of pain on the right side of her neck. On cross-examination, Cotton admitted that she did not see any external injuries around B.H.'s neck consistent with being choked or strangled, nor

6

did she see any signs of vaginal tearing or bleeding. She stated that other than a sore neck, B.H. denied any physical or external injuries.

¶ 16        Paige Erickson testified that in the summer of 2018 she worked in St. Paul, Minnesota as a sales manager for Vector Marketing, a marketing company that sells Cutco knives. At the time, she was a college student. At the Pheasant Run conference, she shared a room with B.H. and another co-worker. On the evening of June 27, 2018, she was with B.H., defendant, and two other male co-workers in one of the hotel rooms. She left around 12:30 a.m. and did not see B.H. again until 7 a.m. on the morning of June 28, when Paige returned to their hotel room. She had a conversation with B.H. and then left for the conference. When she arrived at the morning session, she approached defendant and they had a discussion. She told him she knew what had happened between him and B.H., and defendant apologized. Paige suggested that he write a letter to B.H. expressing his remorse. She suggested a letter rather than a direct conversation, but she did not tell him what to say in the letter. On Monday, July 30, defendant arrived at work around 8 a.m. He gave Paige the letter, and Paige delivered it to B.H. in the parking lot. At the close of Paige's testimony, the State offered the letter, marked as People's Exhibit No. 9, which the trial court admitted without objection.

¶ 17        Defendant testified that he mentored B.H. during the summer of 2018 because he had worked at Cutco longer. After several weeks, B.H. and defendant's work conversations turned personal. They started discussing their dating relationships and asking "more flirty questions." Although he had a girlfriend, defendant admitted that he had "a crush" on B.H. He testified that in the early morning hours of July 28, B.H. went to his shared hotel room willingly. He took her into the bathroom for privacy. He claimed that he performed oral sex on B.H. on the floor of the bathroom and they had vaginal sex. He also testified that they "attempted to do doggie style"

7

intercourse, but he could not penetrate B.H.'s vagina because "her butt was too big." She stood up and put her hands on the bathroom counter, and he attempted to insert his penis into her vagina, standing behind her, however "again her butt was getting in the way, and so it wasn't really working for me." He did not attempt to put his penis in her anus. Defendant testified that B.H. consented to sexual intercourse and did not say "No" at any point during the bathroom encounter.

¶ 18       Defendant explained that he apologized to B.H. on Snapchat because of the no-work-relationship policy at Cutco. He did not want to "get fired." When he told her he was taking full responsibility, he meant he was taking responsibility for breaking company policy. Defendant admitted that he did not ask B.H. to have sex with him on July 28. He also acknowledged that he wrote a letter to B.H. in which he called himself a "monster" and a "pig" and stated that he would understand if she "wanted to press charges." He testified that he wrote the letter because he thought he could be arrested for breaking office policy.

¶ 19       At the end of trial, the court emphasized that both B.H. and defendant had been drinking that evening and that their testimony regarding the details of the incident had to be considered accordingly. In reviewing their testimony, the court found defendant to be less credible and B.H. to be more credible, giving B.H. "the benefit of the doubt over defendant." The court ultimately concluded that defendant used some force because he squeezed the back of B.H.'s neck and leaned against her body while she was standing at the counter, putting his forearm against her back as he stood behind her. After considering all the evidence, the court found defendant guilty of attempted criminal sexual assault (count 5) and acquitted him of the other five counts.

¶ 20       Defendant filed a motion for a new trial and for judgment of acquittal on count 5. In relevant part, he argued that the trial court's verdicts on counts 1-4 and count 6 were inconsistent with the verdict on count 5. The court denied defendant's motion, stating:

"I believe I said at the time that it was my finding that at some point there the defendant crossed the line, went too far. And that it was my finding that this act of having her up against the sink with his body against her and his arm against her back and his hand on the side of her face was a use of force. I looked at that because I saw that it was over -- the victim here was visibly upset. The defendant admitted that -- crying, visibly upset about what had just occurred. He admitted, as the state just pointed out, certainly that he was sorry about what he had done, that he was a monster, that he was a pig, I think he said. When you look at all of that taken together, yes, there were other steps during this that I couldn't find beyond a reasonable doubt and feel comfortable finding beyond a reasonable doubt that a certain act was forced or a certain act caused bodily harm. And as I said at the time, there was a moment that I believe occurred where it changed. And I think her demeanor, his admissions, and the acts that I heard of were enough to constitute a finding of guilty on count five."

¶ 21    At sentencing, the State argued for a term of imprisonment and defendant requested probation. The trial court reviewed defendant's psychosexual evaluation and his presentencing investigation report (PSI), which provided that defendant did not believe he would benefit from sex offender treatment. During his psychosexual evaluation, defendant stated "therapy and I just don't connect. I have a hard time opening up. When asked if he believed he would benefit from sex offender treatment, he said, "No. I'm not a sex offender. We both consented to sex." The court also considered B.H.'s victim impact statement. In it, B.H. admitted that she has had emotional struggles since the incident in July 2018. She noted suicidal ideations, for which she is in counseling, and she explained the negative effect defendant's actions have had on her life, her self-image, and her ability to cope with day-to-day activities.

¶ 22　　　　The trial court sentenced defendant to a minimum term of three years in prison. In imposing the sentence, the court noted:

> "[T]he State is correct and the case law is clear that emotional or psychological type harm can be considered by the Court. It's an appropriate thing for the Court to look at. And both from her testimony and from her victim impact statement, I think it's clear that she has suffered that."

¶ 23　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 24　　　　　　　　　　　　A. Sufficiency of the Evidence

¶ 25　　　　Defendant first contends that the evidence was insufficient to prove him guilty beyond a reasonable doubt of attempted criminal sexual assault where the State failed to prove he took a substantial step toward the completion of a forced act of anal penetration. Specifically, he claims (1) the trial court's finding of force as to the charge of attempt (criminal sexual assault) was legally inconsistent with its findings of no force and acquittals on the other charges; (2) the trial court erred in transferring defendant's intent to engage in vaginal sex as proof of attempted anal penetration; (3) B.H.'s testimony lacked credibility because she was intoxicated and consented to the sexual encounter; and (4) the trial court erred in denying his motion for a new trial and judgment of acquittal in light of his first three claims.

¶ 26　　　　When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Olivieri*, 334 Ill. App. 3d 311, 314 (2002). It is the trier of fact's responsibility to determine the credibility of the witnesses and weigh their testimony, to resolve any conflicts in the evidence, and to draw reasonable inference from the evidence, and a reviewing court will not substitute its judgment for that of the

trier of fact on these matters. *People v. Gray*, 2017 IL 120958, ¶ 35. Instead, we "carefully examine the evidence while bearing in mind that the trier of fact is in the best position to judge the credibility of witnesses, and due consideration must be given to the fact that the fact finder saw and heard the witnesses." *People v. Herman*, 407 Ill. App. 3d 688, 704 (2011). Reversal is justified only where the evidence is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to the defendant's guilt. *People v. Slim*, 127 Ill. 302, 307 (1989).

¶ 27    Section 11-1.20(a)(1) of the Criminal Code provides that a person commits criminal sexual assault if he or she "commits an act of sexual penetration and *** uses force or threat of force." 720 ILCS 5/11-1.20(a)(1) (West 2018). Sexual penetration is defined as:

"any contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including, but not limited to, cunnilingus, fellatio, or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." *Id.* § 11-0.1.

¶ 28    The issue of sexual penetration is a question of fact to be determined at trial. *People v. Herring*, 324 Ill. App. 3d 458, 464 (2001). The testimony of a single witness, if positive and credible, is sufficient to convict, even if contradicted by defendant. *People v. Siguenza–Brito*, 235 Ill. 2d 213, 228 (2009). The trier of fact is entitled to draw all reasonable inferences from the evidence, including an inference that some contact occurred between the defendant and the victim's genitals. *People v. Raymond*, 404 Ill. App. 3d 1028, 1041 (2010). The inference of penetration is unreasonable only if the victim denies that penetration occurred. *People v. Hillier*, 392 Ill.App.3d 66, 69 (2009). Any lack of detail in the victim's testimony affects the weight of the evidence, not its admissibility. *Id.*

11

¶ 29        A defendant commits the offense of attempt "when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a) (West 2018). "[W]hat constitutes a substantial step is determined by the facts and circumstances of each particular case." *People v. Hawkins*, 311 Ill. App. 3d 418, 423 (2000). A substantial step should put the accused in a "dangerous proximity to success." (Internal quotation marks omitted.) *People v. Morissette*, 225 Ill. App. 3d 1044, 1046 (1992).

¶ 30        Here, count 5 alleged that defendant committed the offense of attempt (criminal sexual assault) in that he knowingly placed his penis near B.H.'s anus and that, while doing so, he had the intent to commit criminal sexual assault. In other words, count 5 alleged that, while using force, defendant intended to commit the act of sexual penetration. The charge of attempt did not require the State to prove that defendant intended *anal* penetration but that he intended to commit any one of a myriad of forms of sexual penetration defined by statute. B.H. testified that defendant put his forearm on her back and pressed his hand against her throat as he pushed his penis into her vaginal area while standing behind her. Specifically, she testified that defendant tried to insert his penis into her anus. She stated that she felt pressure against her anus, but defendant was unable to penetrate her anus or her vagina. Defendant corroborated B.H.'s version of events by testifying that he attempted to have vaginal sex with B.H. while standing behind her, but "her butt was getting in the way."

¶ 31        We find this evidence was more than sufficient for the trial court to conclude that defendant, while attempting to penetrate B.H.'s vagina by force, committed an act that put him in "dangerous proximity" to completing an act of sexual penetration. Much of defendant's argument asks us to reconsider the evidence and essentially retry defendant. That is not our job as a court of review, nor can we ignore the trial court's assessment of the witnesses' credibility. See *People v.*

12

*Betance–Lopez*, 2015 IL App (2d) 130521, ¶ 40. The trier of fact is in the best position to make those determinations. Thus, considering all the evidence in the light most favorable to the State, the trial court could have found the essential elements of attempted criminal sexual assault beyond a reasonable doubt and defendant's conviction on count 5 must be affirmed.

¶ 32                                     1. *Inconsistent Verdicts*

¶ 33          We are not persuaded that the trial court's verdict on count 5 is problematic because the court acquitted defendant on the other charges at trial. In *People v. McCoy*, 207 Ill. 2d 352 (2003), our supreme court held that defendants cannot challenge convictions at a bench trial on the sole basis that they are legally inconsistent with acquittals on other charges at trial. *Id.* at 356-57. The *McCoy* court observed that in a bench trial, we must presume that the trial court knows the law and we cannot reject an inconsistent bench conviction as unreliable or suggestive of confusion. *Id.* at 357. In reaching its conclusion, the court noted that consistency in verdicts is not required as a matter of constitutional law and that inconsistent verdicts can often be explained as an exercise of judicial lenity. *Id.* at 358 (citing *People v. Jones*, 207 Ill. 2d 122, 130 (2003)).

¶ 34          In light of this authority, we need not determine whether defendant's conviction for attempted criminal sexual assault on count 5 is inconsistent with the court's finding of not guilty on counts 1, 2, 3, 4, and 6. Even if it was, the trial court's verdicts would still stand. See *McCoy*, 207 Ill. 2d at 357-58. Nevertheless, we find no legal inconsistency stemming from the court's finding that the evidence showed defendant placed his penis near B.H.'s anus by force, while attempting to commit sexual penetration, but was not successful in actually penetrating B.H.'s vagina or anus by force. See *People v. Wesley*, 250 Ill. App. 3d 245, 258 (1993) (verdicts were not legally inconsistent because the findings were not mutually exclusive).

¶ 35                                      2. *Transferred Intent*

13

¶ 36    Defendant also maintains that the trial court erred when it used the doctrine of transferred intent to find him guilty of attempted criminal sexual assault. In an attempt to articulate his position, defendant claims that the holding in *People v. Smith*, 209 Ill. App. 3d 1043 (1991), "does not stand for the proposition that a defendant's intent to have vaginal sex can be transferred to his penis by accidentally touching the [victim's] anus." Defendant's argument is nonsensical and misplaced for two reasons.

¶ 37    First, the doctrine of "transferred intent" is a specific rule in Illinois that applies to murder and other related offenses involving unintended victims of an intentional crime. Under the transferred intent rule, "where a person shoots at one and in the direction of another, with intent to kill, but kills or injures the other, he may be convicted of the crime of murder or attempted murder of the unintended victim." *People v. Migliore*, 170 Ill. App. 3d 581, 589 (1988). No such theory exists in the context of sexual assault and abuse crimes.

¶ 38    Second, it is well-settled that the type of sexual penetration, whether vagina or anal or other sexual organ, is not an essential element of the offense of criminal sexual assault. See *Smith*, 209 Ill. App. 3d at 1056. In *Smith*, the court noted that the State is not required to prove whether defendant intended anal or vaginal penetration, even if the type of penetration is specifically alleged in the indictment. Thus, the defendant was not entitled to separate jury instructions distinguishing the type of sexual penetration alleged in the charging instrument. *Id.*

¶ 39    Here, the trial court found defendant guilty of attempted criminal sexual assault, *i.e.,* defendant completed a substantial step towards committing sexual penetration by force. B.H. testified that defendant put his penis between her buttocks. When asked if his penis touched her anus, B.H. responded that she felt pressure against her anus but defendant was unable to insert his penis inside her anus. Defendant makes much of his testimony that he was attempting to penetrated

14

B.H.'s vagina, not her anus, arguing that evidence of his penis near B.H.'s anus is insufficient to show knowing contact with B.H.'s anus. See *People v. Viser*, 62 Ill. 2d 568, 581 (1975) (no crime if the outcome was not intended but instead was an accident). However, evidence indicated that defendant's penis touched B.H.'s anus. Defendant testified that he unsuccessfully tried to vaginally penetrate B.H. while standing behind her. B.H. also testified that she felt defendant's penis on her back and then felt pressure on her anus as he pushed his body against her. Where, as here, the evidence shows the defendant placed his penis near the victim's anus while attempting vaginal penetration, the evidence is sufficient to prove an attempted crime of sexual penetration. See *Raymond*, 404 Ill. App. 3d at 1041-42; *People v. Atherton*, 406 Ill. App. 3d 598, 609, (2010).

¶ 40                                             3. *B.H.'s credibility*

¶ 41          Defendant further maintains that B.H.'s intoxication undermined her credibility since she admitted that she was having trouble getting her bearings and was "really out of it." The trial court acknowledged that both parties had been drinking, but obviously did not find B.H.'s intoxication dispositive as to the essential elements of the offense. Minor discrepancies by the State's witness in relating a crime do not alone render the testimony as a whole so improbable that it should be disregarded on review. See *People v. Marshall*, 256 Ill. App. 3d 310, 323 (1993). Here, B.H. testified at length and in detail about the encounter with defendant, and the trial court found her account of the events credible. See *Siguenza–Brito*, 235 Ill. 2d at 228 (testimony of single credible witness is sufficient).

¶ 42          Further, we find defendant's argument that B.H. consented to the act of attempted criminal sexual assault bordering on offensive. B.H. explicitly testified that she did not consent, stating that she told defendant to stop multiple times throughout the evening. Voluntarily talking to defendant on the phone days before and laying with him on the bed earlier in the evening does not

15

demonstrate consent to a forced act of attempted sexual penetration committed hours later. See 720 ILCS 5/11-1.70(c) ("A person who initially consents to sexual penetration or sexual conduct is not deemed to have consented to any sexual penetration or sexual conduct that occurs after he or she withdraws consent ***."). Moreover, a sexual assault victim is not required to subject herself to physical harm by resisting to establish that a sexual encounter was nonconsensual. *People v. Nelson*, 148 Ill. App. 3d 811, 820-21 (1986). Although defendant claimed B.H. was a willing participant in the hotel bathroom, his Snapchat post and his letter to B.H. belies his testimony that the sexual encounter was consensual.

¶ 43                    4. *New Trial and Judgment of Acquittal*

¶ 44         Based on the foregoing, we cannot say the court erred in denying defendant's motion for a new trial and judgment of acquittal. See *People v. Willmer*, 396 Ill. App. 3d 175, 181 (2009) (trial court's ruling on a motion for new trial will not be reversed on appeal absent an abuse of discretion). Because defendant cannot challenge the trial court's rulings as inconsistent verdicts and because the evidence was sufficient to prove defendant guilty of attempted criminal sexual assault beyond a reasonable doubt, the denial of defendant's motion was not an abuse of discretion.

¶ 45                    B. Sentencing

¶ 46         Defendant claims the trial court erred in considering the psychological harm to B.H. as an aggravating factor and abused its discretion in sentencing him to prison rather than probation.

¶ 47         In this case, defendant's conviction for attempted criminal sexual assault is a Class 2 felony. See 720 ILCS 5/8-4(c)(3), 11-1.2(b)(1) (West 2018). A Class 2 felony carries a statutory limit of not less than three years and not more than seven years in prison. See 730 ILCS 5/5–4.5–35(a) (West 2018). Consequently, the sentence imposed by the trial court was within the statutory limits.

¶ 48    If a sentence falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977); *People v. Young*, 2022 IL App (3d) 190015, ¶ 19. An abuse of discretion occurs if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense. *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). The sentencing court is granted substantial deference based on its superior position to weigh such factors as the defendant's credibility, demeanor, moral character, mentality, social environment, habits, and age. *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 49    In fashioning an appropriate sentence, courts must make determinations based on the evidence presented at the sentencing hearing. *People v. Steidl*, 177 Ill. 2d 239, 266 (1997). Evidence supporting an inference of psychological harm need not meet the evidentiary standards imposed at trial. See *People v. Rose*, 384 Ill. App. 3d 937, 940 (2008) (evidentiary standards at sentencing are less rigid than those imposed at trial); see also *People v. Cain*, 221 Ill. App, 3d 574, 575-76 (1991) (trial court properly considered victims' letters in PSI as evidence of varying levels of psychological harm suffered by victims).

¶ 50    Generally, a factor implicit in the offense cannot be considered in aggravation at sentencing. *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 15. The assumption being that the legislature has already considered the factors inherent in the offense when determining the sentencing range. *Id.* The elements of criminal sexual assault under section 11-1.20(a)(1) and attempt under section 8-4(a) include completing a substantial step towards sexual penetration by force. See 720 ILCS 5/8-4(a), 11-1.20(a)(1) (West 2018). Harm is not inherent in the offense of criminal sexual assault. See generally *People v. Kerwin*, 241 Ill. App. 3d 632, 636 (1993) (noting that harm is not inherent in the similar offense of aggravated criminal sexual assault). Regardless, our supreme court has made it clear that the degree of harm may be an appropriate aggravating

17

factor to consider at sentencing. See *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986); see also 730 ILCS 5/5-5-3.2(a)(1) (West 2018) (whether "defendant's conduct caused or threatened serious harm" in an appropriate aggravating factor).

¶ 51 Moreover, many cases have held that psychological harm, per the degree of harm suffered by the victim, was properly considered as an aggravating factor in sexual assault cases. See *People v. Reber*, 2019 IL App (5th) 150439, ¶ 94; *Bunning*, 2018 IL App (5th) 150114, ¶ 15; *Kerwin*, 241 Ill. App. 3d at 636; *People v. Nevitt*, 228 Ill. App. 3d 888, 891-92 (1992); *People v. Ulmer*, 158 Ill. App. 3d 148, 151 (1987); *People v. Fisher*, 135 Ill. App. 3d 502, 506 (1985); *People v. Burton*, 102 Ill. App. 3d 148, 153-54 (1981). Although these cases concern psychological harm to child victims of sexual offenses, we find the underlying rationale applies equally to the consideration of psychological harm suffered by adult victims of sex offenses, particularly where, as here, the victim is still a teenager in her formative years as a young adult. Here, evidence of significant and continued psychological harm was presented at the sentencing hearing through B.H.'s victim impact statement. It was not an improper factor for the court to consider.

¶ 52 Further, defendant's sentence falls well within the three-to seven-year sentencing range for a Class 2 felony conviction. See 730 ILCS 5/5-4.5-35(a) (West 2018). Although probation was available for the offense of attempted criminal sexual assault (*id.* § 5-4.5-35(d)), the three-year sentence was neither greatly at variance with the spirit and purpose of the law, nor manifestly disproportionate to the nature of the offense (*Stacey*, 193 Ill. 2d at 210). Accordingly, the trial court did not err by sentencing defendant to the minimum term of imprisonment.

¶ 53 III. CONCLUSION

¶ 54 The judgment of the circuit court of Du Page County is affirmed.

¶ 55 Affirmed.