THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS KILLEN, Defendant-Appellant.

Fourth District   No. 4—90—0760

Opinion filed August 22, 1991.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Following a jury trial, defendant, Thomas Killen, was convicted of aggravated criminal sexual abuse (Ill. Rev. Stat. 1989, ch. 38, par. 12—16(d)) and sentenced to four years' probation with the condition that he serve 180 days in jail. Defendant appeals, arguing that (1) the issues instructions incorrectly referred to sexual conduct, instead of sexual penetration, (2) the State improperly argued that a witness was more credible than other witnesses because she was a police officer, (3) the jury instructions for aggravated criminal sexual abuse failed to include a mental state, and (4) the trial court erred when it ordered defendant to serve 90 days in jail at the end of his probation term but failed to set a remission hearing prior to the commencement of his incarceration.

We affirm and remand with directions regarding defendant's sentence.

## I. BACKGROUND

In July 1990, defendant was charged by an amended information with the offense of aggravated criminal sexual abuse. Defendant was accused of committing an act of sexual penetration on October 15, 1989, by placing his penis in the anus of P.W. The amended information also alleged that P.W. was at least 13 years of age but under 17 years of age and that defendant was at least five years older than P.W.

Katherine Williams, P.W.'s mother, testified that during September 1989, she and her children needed a place to live. She was acquainted with defendant and his wife, Debra Killen, and she asked them if she could stay at their home for a few months. They agreed, and the Williams family moved in at the end of September.

Williams testified that on October 15, 1989, Debra informed her that something had occurred involving P.W., her 15-year-old son. Williams spoke with P.W. and then notified the police. She also took P.W. to the hospital.

Williams testified that she had paid $250 rent to the Killens in September and October. She stated that she had not been told that she and her family had to leave before October 15. The Williams family stayed at the Killen residence for an additional week after October 15, 1989.

P.W. testified to three sexual episodes at the Killen residence. He stated that two weeks before October 15, defendant approached him and they engaged in oral sex. They also engaged in oral sex the week before October 15. On both of these occasions, defendant threatened to throw P.W.'s family out if he reported the incident. P.W. testified that because his family's financial situation was poor and they had nowhere to go, he was scared and did not initially report these incidents.

P.W. also testified that on the morning of October 15, defendant once again approached him and, after defendant put Vaseline on his penis and removed P.W.'s pants, engaged in anal sex with P.W. P.W. stated that defendant "came" while he was inside P.W.'s anus.

The doctor testified who examined P.W. on October 15 at approximately 9 p.m. He was unable to determine whether P.W. had been sexually assaulted. While his examination revealed nothing unusual or dramatic about P.W.'s physical condition, he noticed some redness around P.W.'s rectal opening and took a rectal swab and smear.

A forensic serologist testified that her examination of the rectal swab and smear revealed the presence of seminal material. However, the serologist was unable to positively identify the blood type of the seminal material because there was not enough present on the rectal swab and smear.

Police officer Brenda Campbell testified that on the evening of October 15, she interviewed defendant. He never denied being involved in the sexual incident with P.W. However, defendant explained that P.W. made approaches toward him and, although defendant attempted to ward off the advances, he eventually capitulated. He admitted lubricating himself and putting his penis in P.W.'s anus around 11:30 a.m. that day. Defendant stated that he and P.W. did not kiss and that the act was for sexual gratification and nothing more. Defendant explained to Campbell that P.W. threatened to go to the street for sex and that defendant wanted him to avoid disease. Campbell stated that defendant cried during the interview and said that he would not force himself on anyone, especially a young boy, and that he felt used and taken advantage of.

Defendant testified and denied engaging in sexual activity with P.W. He stated that on the morning of October 15, he left with his

father and mother at approximately 11:15 a.m. to play bingo. Defendant recalled that when they returned later that afternoon, Debra had a conversation with P.W.'s brother regarding an incident that did not involve defendant. Defendant stated that Debra then contacted Williams, who in turn contacted the police.

Defendant admitted that he was interviewed by Campbell at the police station but denied that he made any incriminating statements to her.

Defendant stated that on October 14, 1989, the day before the alleged incident, he had a dispute with Williams over the payment of rent. Defendant told Williams she would have to leave his residence if she did not pay her fair share of rent. According to defendant, Williams agreed to pay monthly rent while she stayed at the residence.

Debra testified that Williams paid rent only in September 1989, and thereafter she paid no further rent. Williams testified to the contrary, maintaining that she paid her rent in a timely fashion.

The jury found defendant guilty of the offense of aggravated criminal sexual abuse, and the court sentenced him to probation for a period of four years. As a condition thereof, the court ordered defendant to serve 180 days in jail. The court's order of incarceration specified 90 days to be served at the beginning of the probation period. The final 90 days would be served "subject to review and waiver" at the end of the probationary period. The court did not set a remission hearing to review the final incarceration period.

## II. THE ISSUES INSTRUCTION

Defendant first argues on appeal that the jury instructions were confusing on a key element of the charge of aggravated criminal sexual abuse because the definitional instructions used the term "sexual penetration" while the issues instruction used the term "sexual conduct." Additionally, defendant argues that the jury was further confused because it was not instructed on the definition of the term "sexual conduct." The jury was given the following instructions:

> "A person commits the offense of aggravated criminal sexual abuse when he commits an act of *sexual penetration* with a victim who is at least 13 years of age but under 17 years of age when the act was committed and he was at least 5 years older than the victim." (Emphasis added.)

See Illinois Pattern Jury Instructions, Criminal, No. 11.38, at 182-83 (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d).

> "The term *'Sexual Penetration'* means any intrusion, however slight, of any part of the anus of another person, including

but not limited to cunnilingus, fellatio, or anal penetration. Evidence of emission of semen is not required to prove sexual penetration." (Emphasis added.)

See IPI Criminal 2d No. 11.65, at 192.

"To sustain the charge of aggravated criminal sexual abuse, the State must prove the following propositions:

FIRST: That the defendant committed an act of *Sexual Conduct* with [P.W.]; and

SECOND: That [P.W.] was at least 13 years of age but under 17 years of age when the act was committed; and

THIRD: That the defendant was at least 5 years older than [P.W.].

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty." (Emphasis added.)

Compare IPI Criminal 2d No. 11.40, at 186-87.

The term "sexual conduct" is defined in section 12—12(e) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 12—12(e)) as follows:

" 'Sexual conduct' means any intentional or knowing touching or fondling by the victim or the accused, either directly or through clothing, of the sex organs, anus or breast of the victim or the accused, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused."

As defendant points out, the issues instruction used in this case was based upon IPI Criminal 2d No. 11.40. However, for reasons we cannot begin to guess at, the issues instruction actually given refers, in the first proposition thereof, to sexual conduct instead of to sexual penetration, as does the immediately preceding instruction which correctly defines the offense of aggravated criminal sexual abuse (IPI Criminal 2d No. 11.38). Accordingly, the issues instruction was erroneous.

Defendant admits that he did not object at trial, offer alternative instructions, or raise this issue in his post-trial motion. However, he argues that this issue is not waived on appeal because the court's giving the erroneous issues instruction constituted "grave error." We disagree.

"Generally, a defendant waives any error contained in jury instructions if he does not object or proffer alternative instructions at trial and, ordinarily, issues not properly raised in a defendant's post-trial motion will not be considered on appeal. [Citation.] However, if the interests of justice require, substantial defects in jury instructions in criminal cases may be considered, even though the defendant has failed to make timely objections. [Citation.] This exception will be invoked to correct grave errors or to correct errors in cases so closely balanced that fundamental fairness requires that the jury be properly instructed. [Citation.]

*** We have previously held that certain instructions, such as *** elements of the offense, are essential to a fair trial and that the failure to give such instructions constitutes grave error when, viewing the record as a whole, it appears that the jury was not apprised of the People's burden of proof." *People v. Reddick* (1988), 123 Ill. 2d 184, 198, 526 N.E.2d 141, 147.

After considering the standards discussed in *Reddick*, we are satisfied that this is not a case involving "grave error," nor is it an appropriate case to invoke the "plain error" rule (134 Ill. 2d R. 451(c)). We note that the jury was given a proper definition of the offense of aggravated criminal sexual abuse (as including the element of sexual penetration) and was given as well the definition of sexual penetration. The jury was never given any definition of the term "sexual conduct," nor does that term appear in any instruction other than in the first proposition of the issues instruction. Thus, the jury would have no reason to believe that "sexual conduct" was anything other than another way of referring to the acts constituting "sexual penetration." It certainly would have no basis to conclude that the acts constituting "sexual penetration," which the State had to prove, involved a more significant degree of sexual activity than the acts constituting the definition of "sexual conduct."

Further, this case is distinguishable from *Reddick* because the confusion here between the issues instruction and the definitional instruction did not affect any disputed issue which the jury had to resolve. In the present case, there was no dispute regarding the *kinds* of sexual activities in which defendant and P.W. engaged. Instead, defendant denied engaging in *any* sexual activity with P.W., while P.W. testified to acts of both oral and anal intercourse. (We note in passing that both of these kinds of sexual activities fit under the statutory definition of sexual penetration (Ill. Rev. Stat. 1989, ch. 38, par. 12—12(f)).) Thus, the jury was extremely unlikely on these facts to be

concerned about (or perhaps even to notice) the difference in terminology between the definitional instruction and the issues instruction. Further support for our view on this point comes from a review of the closing arguments of counsel, which focused on the issue of whether *any* sexual activities occurred between defendant and P.W., not on what the nature of those sexual activities might have been.

As a last point, we do not believe this to be a close case on its facts. The jury had the opportunity to hear and see P.W. when he testified about engaging in sexual activities with defendant, to hear medical evidence corroborating P.W.'s testimony that he had been the victim of anal intercourse, and to hear the testimony of Officer Campbell in which she related defendant's admissions to her of engaging in that behavior.

For all of these reasons, we decline to reverse defendant's conviction due to the erroneous instruction which was given.

### III. Closing Argument

Defendant next contends that the State's closing argument was improper because the State asserted that Campbell had enhanced credibility because she was a sworn police officer. Specifically, defendant argues that the following remarks during the opening portion of the State's closing argument were improper:

"You heard Brenda Campbell. Brenda Campbell also climbed on the the [*sic*] stand. She's been a police officer and in law enforcement pretty much her whole life, security ever since she's been out of high school, been a police officer for thirteen years, started at a store, with the Secretary of State, the Chatham P.D., Sangamon County, and now she's a detective, sworn police officer, sworn to uphold the law.

\* \* \*

Ladies and gentlemen, yesterday you witnessed that someone in this courtroom committed an act of perjury. Either Deputy Detective Brenda Campbell, sworn police officer, who did not know either of the parties, objective, was sworn to uphold the law, committed an act of perjury and told you that he [defendant] admitted it, or the defendant committed an act of perjury when he said he did not. You can look, and I believe the Judge will read you an instruction which states that you can look at the credibility of the witnesses. You look at their motive, you look at their interest and bias.

What interest and bias does Brenda Campbell have? She's an objective police officer. She was simply investigating a case.

What interest did the defendant have? The defendant is on trial. The defendant has every reason to deny making the statement. He has everything to gain. If you believe him he can walk out of this courtroom. If you don't believe him, then he has lost nothing by denying the statement. Someone committed an act of perjury. It's up to you to decide who did it."

Defendant further contends that the following comments made during the State's rebuttal argument were improper:

"Brenda Campbell has made a career out of law enforcement. She told you she did it to advance her career as a police officer. What motive or interest does she have to perjure herself? What would that do to her career as a police officer if she was found guilty of lying in court? It would destroy any credibility she has, destroy her career as a police officer. Why would she even dream of making such a mistake when she has spent her whole life becoming a police officer?

Police respond to the crime. They're the line between society and crime and they report what they see and what they hear.

\* \* \*

\*\*\* Detective Campbell did not have any reason for her to lie. A police officer is objective. She is the only one in this entire trial who wasn't related to someone, who didn't know someone, who didn't have an interest to lie. She has her entire career resting on the line today \*\*\*."

Citing *People v. Ford* (1983), 113 Ill. App. 3d 659, 662, 447 N.E.2d 564, 567, defendant argues that the prosecutor's "repeated and obvious references" to Officer Campbell's status as a police officer improperly enhanced her credibility. In *Ford*, the prosecutor argued to the jury that when it decided whether the defendant or a deputy sheriff was telling the truth, the jury should keep in mind that the deputy was a "sworn" police officer. (*Ford*, 113 Ill. App. 3d at 661-62, 447 N.E.2d at 566.) The court in *Ford* wrote the following:

"The prosecutor was certainly aware of the fact that credibility was an important issue in this case. However, a police officer's testimony is to be evaluated in the same manner as that of any other witness and there is no presumption that such testimony is more credible than that of any other witness. [Citation.]

The manner in which the prosecutor made repeated references to [the deputy's] status as a police officer and a sworn deputy was an improper attempt to enhance the credibility of his witness. Although a prosecutor may comment on the credi-

bility of witnesses, the remarks in this case exceeded the boundaries of proper argument." *Ford*, 113 Ill. App. 3d at 662, 447 N.E.2d at 567.

■ In the present case, Campbell testified that she interviewed defendant on October 15 and had obtained from him an admission that he engaged in anal sex with complainant. Defendant thereafter denied making this statement. In closing arguments, the State referred to this conflicting testimony and commented that either Campbell or defendant was lying. The State further commented that Campbell had no reason to lie, could jeopardize or destroy her career by lying, and would not do so. Such an argument is proper when, as here, it can be characterized as comment on, or discussion of, the credibility of the defendant and other witnesses, and when it is based on the evidence and reasonable inferences drawn therefrom. *People v. Richardson* (1988), 123 Ill. 2d 322, 356, 528 N.E.2d 612, 625; *People v. Smith* (1991), 209 Ill. App. 3d 1043, 1051, 568 N.E.2d 482, 487; *People v. Thomas* (1988), 172 Ill. App. 3d 172, 178-79, 526 N.E.2d 467, 471 (prosecutor's remarks that either defendant or the police officers had to be lying held proper argument because of direct conflict in the testimony of the police officers and that of the defendant).

■ We disagree with the decision in *Ford* and decline to follow it because we believe it to be inconsistent with the holding of the Illinois Supreme Court in *People v. Flores* (1989), 128 Ill. 2d 66, 94, 538 N.E.2d 481, 492, wherein the supreme court wrote the following: "The credibility of witnesses is a proper subject for closing argument if it is based on the facts in the record or inferences drawn from those facts." Of course the *Ford* court is correct when it notes that "there is no presumption that [a police officer's] testimony is more credible than that of any other witness" (*Ford*, 113 Ill. App. 3d at 662, 447 N.E.2d at 567), but that observation has nothing to do with a jury's evaluation of (and the prosecutor's ability to argue) the credibility of a witness whom the jury has actually seen and heard. Neither the prosecutor in *Ford* nor the prosecutor in the present case mentioned anything about a presumption in their closing arguments; instead, the jury was asked to evaluate the particular police officer whose credibility was at issue.

We note that defendant in his argument before this court nowhere challenges any of the factual averments in the prosecutor's closing argument regarding Officer Campbell but, citing *Ford*, argues only that the prosecutor's constant references to Campbell as a sworn police officer enhanced her credibility in the eyes of the jury, leading to unfair

prejudice. We hold that these references may in fact have enhanced her credibility, but there was nothing unfair about them.

### IV. No Mental State In Jury Instructions

Next, defendant argues that his conviction must be reversed because the jury instructions on the offense of aggravated criminal sexual abuse did not include a mental state. In support of this argument, defendant cites the dissent in *People v. Burton* (1990), 201 Ill. App. 3d 116, 123-29, 558 N.E.2d 1369, 1374-78 (Steigmann, J., dissenting). However, in *People v. Smith* (1991), 209 Ill. App. 3d 1043, 1060-61, 568 N.E.2d 482, 493, this court reaffirmed its decision in *Burton*, and we decline to review the issue further.

### V. Remission Hearing Prior To Incarceration

Last, defendant argues that pursuant to *People v. Hollinshead* (1991), 207 Ill. App. 3d 425, 427, 566 N.E.2d 8, 10, the trial court erred in not providing for a remission hearing prior to defendant's incarceration. The State concedes the point and we agree. Accordingly, we remand with directions for the trial court to set a date for a remission hearing.

Affirmed and remanded with directions.

LUND, P.J., and KNECHT, J., concur.