No. 3--05--0330

_____

Filed April 20, 2007
IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04--CF–990 |
| JERRY L. PORTER, | ) ) | Honorable Daniel J. Rozak, |
| Defendant-Appellant. | ) | Judge Presiding. |

Justice Wright delivered the opinion of the court:

Defendant, Jerry L. Porter, appeals from his convictions for aggravated battery (720 ILCS 5/12–4(b)(6) (West 2004)) and obstructing justice (720 ILCS 5/31–4(a) (West 2004)). We reverse and remand for a new trial.

BACKGROUND

On February 9, 2005, defendant, Jerry Porter, was charged by first superseding indictment with aggravated battery (720 ILCS 5/12–4(b)(6) (2004)), and two counts of obstructing justice (720 ILCS 5/31–4(a) (West 2004)). Count I of the indictment alleged that on July 11, 2004, defendant knowingly and without lawful justification made physical contact of an insulting or provoking nature

-1-

with Peter Van Gessel, knowing him to be a peace officer engaged in the execution of his official duties, by pushing him in the chest. Count II alleged that defendant, with the intent to obstruct his own prosecution for possession of a controlled substance, knowingly destroyed evidence by swallowing a baggie containing an off-white, rock-like substance. Count III alleged that defendant, with the intent to obstruct his own prosecution for possession of a controlled substance, knowingly concealed evidence by swallowing a baggie containing an off-white, rock-like substance.

At trial, Charles Palmer testified that at about 8 p.m. on July 11, 2004, he observed four young men congregated near his house at the corner of Hickory and Division in Joliet. The men were drinking beer and yelling at passing cars, "Hey, hey, hey, you straight?" When the men began arguing over money, Palmer called "911." Police arrived within a few minutes. All Palmer could see were two men's legs on the ground because the squad car partially blocked his view. Palmer thought the officer needed assistance because a crowd was forming and again called "911." At least 20 squad cars arrived within minutes of Palmer's second call.

On cross-examination, Palmer testified he was not certain if defendant was one of the four men he saw that evening. Even if defendant was one of the four men, Palmer could not say that defendant was drinking alcohol or acting aggressively, or that he heard defendant say anything.

Joliet police officer, Peter Van Gessel testified he responded to a radio dispatch about a fight on July 11, 2004, at about 7:50 p.m. Van Gessel was driving a squad car and was in uniform. As he drove from Division onto Hickory, Van Gessel saw defendant from the back leaning into a parked car. Defendant's head, shoulders, and arms were inside the car and he appeared to be handing something to someone inside the car. When Van Gessel exited his squad car, defendant stood up and the car began to drive away. Van Gessel ordered the car to stop, and it did. Two men were inside the

car.

Van Gessel ordered defendant back to the squad car. Defendant complied. It appeared to Van Gessel that defendant was chewing something. Van Gessel asked defendant what he was chewing. Defendant opened his mouth to reveal a piece of gum and then turned to his left and spit out the gum, as well as a small, clear baggie containing an off-white, rock-like substance. Defendant then pushed Van Gessel and dove to the ground, on top of the baggie. Van Gessel took a step backwards as a result of the push, and then dropped on top of defendant to try and retrieve the baggie. Van Gessel claimed that defendant picked up the baggie and appeared to put it in his mouth. Van Gessel applied force to defendant's lower jaw with his thumb to try and prevent defendant from swallowing anything, but ultimately removed his thumb after being distracted by a man who was approaching and shouting at him. Van Gessel radioed for assistance.

Van Gessel then got one handcuff on defendant, who was struggling beneath him. Shortly thereafter, Officer David Friend arrived and helped subdue and handcuff defendant. Van Gessel then pat-searched defendant and found no contraband, weapons, money, or cell phones on defendant's person. Following the incident, Van Gessel saw the gum defendant had spit out was still on the ground, but did not see any clear plastic baggie. On cross-examination, Van Gessel admitted that he did not actually see defendant put the baggie in his mouth.

Joliet police officer, David Friend, testified that he was dispatched to the corner of Hickory and Division concerning a disturbance and an officer needing assistance at about 8 p.m. on July 11, 2004. When he arrived at the scene, he observed Van Gessel and defendant on the ground near Van Gessel's squad car. Van Gessel appeared to have defendant under control and was in the process of handcuffing defendant. Friend searched the scene and found no drugs or drug paraphernalia.

Following Friend's testimony, the State rested. The defense then called a single witness, Aisha Baker.

Aisha Baker testified she was familiar with the area around Division and Hickory. Baker and defendant were "casual friend[s]." At about 8 p.m. on July 11, 2004, Baker was outside, looking out onto the street from behind a wrought iron fence, when she saw a police car pull up. Two officers got out of the car and grabbed defendant. Defendant stepped back and "threw his hand out" as if to ask what he had done. Baker did not see anything in defendant's hands. One of the officers asked defendant what was in his mouth and accused defendant of having crack cocaine in his mouth. The officer then threw defendant to the ground and choked him, forcing him to spit out gum. Defendant's nose was bleeding. Defendant never pushed the officer. According to Baker, defendant "always chews gum." Baker guessed she may have been standing about 100 feet or more from where the confrontation took place. There was nothing obstructing Baker's view. Baker saw other people drinking beer that day, but defendant was not drinking beer.

Baker never reported what she saw to the police. The first time she told anyone what she saw was when she was contacted by a defense investigator in December 2004. Baker acknowledged she had prior misdemeanor convictions for resisting a police officer and obstructing a peace officer in early 2004. Baker failed to appear in court on those charges and, in October 2004, she was arrested on a warrant by Van Gessel. The defense rested following Baker's testimony.

During closing arguments, one of the prosecutors told the jury that by asking "Are you straight?," defendant was asking, "Do you want any drugs?" The prosecutor also told the jury:

"If you look at the larger picture of what was going on that day, *** what the defendant had going on was basically a fast food joint for dealing drugs, and he had

buddies he was with who were on the corner, and he was basically using the parking lot of St. John's church as a position to sell drugs and flag down vehicles that were going by in the street that evening."

In rebuttal closing argument, another prosecutor told the jury:

"What is [defendant] doing out there? He's hanging out with people out on a street corner *** what were those people doing out there with him? Why were they flagging down cars that are going by? Why are they saying [']you straight, you straight?['] When was the last time you pulled out of your driveway and just flagged cars down just to make sure they were all straight?

Well, I think everyone is driving straight, aren't they? So, you don't need to ask that unless there is an ulterior motive, unless you're doing something that you should not be doing. And, ladies and gentlemen, based upon the evidence in this case, based upon the circumstantial evidence as well as the direct evidence, our position is that the defendant was part of an enterprise, he was hanging out with people selling drugs on that street corner.

They were stopping cars. Some cars went by. Eventually a buyer bit, he pulled into this driveway, turned around, got back out, and the defendant walked over. But before all of that happened, and that's all circumstantial evidence, why is he leaning into a car and talking when the police arrive? Our common sense tells us that somebody who is away from his house, who is a mile away from it, who is hanging out on a street corner where he doesn't even reside, with people that he is – just his people that he's working with, that's an individual that is conducting a drug

transaction.

Ladies and gentlemen, he didn't have any cell phones, but that's not dispositive of anything here. Well, you know, there were three other people there *** one of them *** could have held the cell phones, he could have held the cash. One person could have just taken little bits and pieces of the drugs in this case and taken them over to the cars.

Doesn't that make sense? If you're dealing drugs, why would you want to carry all of the drugs on you? Wouldn't it make more sense just to carry small pieces of drugs? Why lose the whole shipment when you can just do it one at a time, sort of like inventory. This is like an enterprise, when you sell drugs. You do it just like a business.

*** 

Ladies and gentlemen, with everything else, when you combine little bits and pieces of evidence in this case, it becomes pretty clear that the defendant had no other legitimate purpose to be out there than him hanging out.

All of this leads to a conclusion that obviously they were working together on this corner selling drugs to people ***."

The jury found defendant guilty of aggravated battery and obstructing justice. The trial court denied defendant's motion for a new trial and sentenced defendant to concurrent, extended-term sentences of 8 years' imprisonment for aggravated battery and 6 years' imprisonment for obstructing justice on April 22, 2005. On May 6, 2006, the trial court denied defendant's motion to reconsider his sentences. Defendant filed a timely notice of appeal pursuant to Supreme Court Rule 606(b) (188

Ill. 2d R. 606(b)).

ANALYSIS

On appeal, defendant contends, *inter alia*, that the prosecutors made improper comments during their closing arguments which denied him a fair trial. The State contends that defendant has waived this issue because defense counsel did not object to the prosecutors' comments during closing argument, nor was the issue raised in defendant's post-trial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (to preserve an issue for appeal, an objection must be raised during trial and the issue raised in a written post-trial motion.) We note that the State's "waiver" argument is really a claim of forfeiture or procedural default. " '[W]aiver implies a knowing relinquishment of a right, whereas procedural default refers to the failure to adequately preserve an issue for later appellate review.' " *People v. Whitfield*, 217 Ill. 2d 177, 187-88 (2005), quoting *People v. Blair*, 215 Ill. 2d 427, 457 n. 3 (2005) (Freeman, J., dissenting, joined by McMorrow, C.J., and Kilbride, J.). Although defendant has technically forfeited this issue, the rule of forfeiture is "an admonition to the parties and not a limitation on the jurisdiction of the reviewing court. *People v. Normand*, 215 Ill. 2d 539, 544 (2005).

Moreover, Supreme Court Rule 615(a) allows consideration of plain errors or defects affecting substantial rights that were not brought to the attention of the trial court. 134 Ill. 2d R. 615(a). The plain-error doctrine allows a reviewing court to consider a waived error when "(1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). As our supreme court explained in *Herron*:

> "In the first instance, the defendant must prove 'prejudicial error.' That is, the

defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.] Prejudice to the defendant is presumed because of the importance of the right involved, 'regardless of the strength of the evidence.' [Citation.] In both instances, the burden of persuasion remains with the defendant. [Citations.] *Herron*, 215 Ill. 2d at 187.

Defendant contends the prosecutors' improper comments were plain error because the evidence was closely balanced and because the remarks unfairly bolstered the State's case. We agree with defendant that the evidence was closely balanced in this case because defendant presented evidence that tended to refute the State's evidence showing defendant pushed Officer Van Gessel and attempted to destroy or conceal evidence by swallowing drugs. Although there were numerous witnesses to the incident, no witness corroborated Van Gessel's testimony that defendant initiated the contact with the officer by pushing him in the chest. Further, no evidence was discovered on defendant's person suggesting defendant had been in possession of illegal drugs. We find that review under the first prong of the plain-error doctrine is warranted, despite defendant's procedural default. Accordingly, we will consider whether the prosecutors' remarks during closing argument resulted in plain error, warranting reversal.

We must first determine whether the prosecutors' remarks were improper. The prosecution

is allowed great latitude in closing argument and may argue fair and reasonable inferences that can be drawn from the evidence introduced at trial. *People v. Dunsworth*, 233 Ill. App. 3d 258, 267 (1992). However, prosecutors have an ethical obligation to refrain from presenting improper and prejudicial evidence or argument. *Dunsworth*, 233 Ill. App. 3d at 269. The prosecution may not "argue assumptions or facts not based upon the evidence in the record." *People v. Johnson*, 208 Ill. 2d 53, 115 (2003). The prosecution may not present argument calculated solely to inflame the passions and prejudices of the jury. *Dunsworth*, 233 Ill. App. 3d at 267.

The remarks made by the prosecutors in their closing arguments, which suggested defendant was dealing drugs in a neighborhood where he didn't belong, were improper. The prosecution repeatedly told the jury defendant was "flagging down cars" and asking motorists if they wanted to buy drugs, even though there was no such testimony presented to the jury. We recognize that one witness, Mr. Palmer, testified he witnessed four men drinking beer and yelling at cars. However, Mr. Palmer did not testify that any of the men were "flagging down cars" or that he witnessed anything even remotely suggesting the men were engaged in selling drugs. No other witness testified that defendant was flagging down or stopping cars, nor did any witness testify that defendant was dealing drugs or in possession of drugs, cell phones, money, or contraband. There was absolutely no testimony introduced during the trial that drug dealers act in groups and, when they do so, one person holds the drugs, another holds the money, and a third holds the cell phones. Here, the prosecution improperly went outside the record and argued evidence that was not elicited before the jury

This does not, however, end our inquiry. "A reviewing court will find reversible error based upon improper comments during closing arguments only 'if a defendant can identify remarks of the prosecutor that were both improper and so prejudicial that "real justice [was] denied or that the

verdict of the jury may have resulted from the error.” ’ ” *Evans*, 209 Ill. 2d at 225, quoting *People v. Jones*, 156 Ill. 2d 225, 247-48 (1993), quoting *People v. Yates*, 98 Ill. 2d 502, 533 (1983). We will reverse a conviction based on a prosecutor’s improper comments during closing argument when “those remarks were such that without their having been made, the jury might have reached a different result.” *Dunsworth*, 233 Ill. App. 3d at 266.

The State argues the comments were reasonable inferences that explained defendant’s otherwise irrational conduct. We disagree. Rather, the comments were akin to testimony that was never presented at trial. In essence, the prosecution misstated evidence in closing argument to bolster their case, in which the evidence against defendant was exceedingly weak. We conclude that, in this case, the cumulative effect of prosecutors’ repeated improper statements deprived defendant of his constitutional right to a fair trial in what was a closely balanced case. The comments could have had no other purpose but to inflame the juror’s passions, and the prosecutors’ conduct did nothing to advance the truth-seeking process.

The prejudice here was significant because only the prosecutors told the jury that defendant was flagging down cars, asking if motorists wanted to buy drugs, and acting in concert with other persons in a manner common to drug dealers. It is apparent that the prosecutors’ improper conduct created a situation where the jury likely believed the prosecutors’ claims even though no such evidence was presented at trial. Moreover, defendant was not charged with possession or intent to deliver any illegal substances. The comments where not only unfavorable to defendant, they were also unrelated to the charges brought against defendant. Clearly, defendant was denied his constitutional right to a fair trial. Under these circumstances, we invoke the plain-error exception to the waiver doctrine.

Based on our finding that the evidence was closely balanced in this case, we cannot determine, with a reasonable degree of certainty, that the prosecution's improper comments did not contribute to defendant's guilty verdict. Accordingly, we reverse the judgment of the Circuit Court of Will County and remand the cause for a new trial.

As a result of our holding that defendant is entitled to a new trial based on the prosecution's improper closing argument, we find it unnecessary to address any of the remaining issues raised in defendant's appeal.

CONCLUSION

We find that the prosecutors' improper comments during closing argument in this case amounted to plain error that deprived defendant of a fair trial. The judgment of the Circuit Court of Will County is therefore reversed and the cause is remanded for a new trial.

Reversed and remanded.

CARTER and O'BRIEN, JJ., concurring