No. 3–09–0004

Filed August 30, 2010

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court for the 12th Judicial Circuit, Will County, Illinois |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06–CF–546 |
| ROMNEY ADAMS, | ) ) | Honorable Carla Policandriotes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

The defendant, Romney Adams, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2006)) and sentenced to five years' imprisonment. On appeal, the defendant contends that the prosecutor made improper and prejudicial remarks during closing argument, which require that the matter be reversed and remanded for a new trial. The State maintains that the prosecutor's arguments were permissible. We reverse the defendant's conviction and remand for a new trial.

FACTS

The defendant's jury trial was held on October 15, 2008. In opening statements, the prosecutor told the jury that he expected the jury to hear evidence from two witnesses, Sergeant Joe Boers and crime lab technician Cynthia Koulis.

Sergeant Boers testified that on March 3, 2006, at approximately 7:42 p.m., he and two other officers were in a semi-marked police vehicle in the parking lot of a liquor store in Joliet Township. Boers observed a tan Oldsmobile in the parking lot and ran the vehicle's license plate number. Boers received information that the defendant was the registered owner of the vehicle and that he had a suspended driver's license. Boers also received a physical description of the owner, which matched the appearance of the person then driving the vehicle.

The defendant backed the vehicle out of a parking spot and passed in front of the police vehicle. The defendant left the parking lot and pulled into the parking lot of a grocery store across the street. Boers followed the defendant's vehicle and activated the police car's emergency lights. After effectuating the stop of the defendant's vehicle, Boers exited the police car, approached the defendant's vehicle, and asked the defendant for his driver's license. The defendant produced his license and two traffic citations for previous driving offenses. Boers asked the defendant to exit his vehicle and then walked the defendant to the rear of that vehicle. Boers arrested the defendant for driving while his license was suspended and handcuffed the defendant.

Boers then searched the defendant. Boers found a small plastic sandwich bag containing a white powder in the defendant's left front pocket. Boers suspected that the substance was cocaine and conducted a field test of the substance. The substance tested positive for the probable presence of cocaine. Boers then placed the defendant into the police vehicle. Another officer searched the defendant's car, but did not find anything.

Boers testified that there was nothing on the ground in front of the defendant before Boers searched him. Boers did not find any narcotics on the ground and denied picking up any

narcotics and placing them on the defendant's person. Further, Boers testified that the defendant's arrest took place in a high drug activity area. Boers estimated that he had made approximately 20 other arrests for drug crimes in that general area.

When searching a suspect, Boers usually starts at the top, and also briefly touches the outside of any pockets to make sure there is nothing in the pockets that would cut him. Boers testified that he does not search a suspect's pockets first. Boers testified that no other officer was involved in the search of the defendant, and no other officer conducted a field test of the substance. Boers testified that Officer Buck, who was on patrol with Boers, was a female officer, and she would not have assisted in the search of a male suspect.

Cynthia Koulis testified that she was a forensic scientist employed by the Illinois State Police and specialized in the analysis of controlled substances and cannabis. Koulis performed several different tests on the substance collected during the defendant's arrest. That substance weighed 0.8 grams and tested positive for cocaine.

The defendant testified that on March 3, 2006, at approximately 7:30 p.m. he went to a liquor store to buy a lottery ticket and then drove across the street to the grocery store to buy some ice and water. The defendant parked and exited his vehicle. As he got out of his vehicle, a police car pulled up behind him with its lights flashing. An officer told him to halt, and he did. Boers asked the defendant for his driver's license, and the defendant produced two traffic citations. Boers told the defendant he was under arrest and to put his hands behind his back. Boers took the defendant by the hand and walked him to the rear of the police vehicle. Boers did not handcuff the defendant at that time.

According to the defendant's testimony, Boers told him to empty his pockets and then

told him that he was moving too slowly and to put his hands behind his back. Officer Buck then searched the defendant's right pants pocket and took out his keys and his pocketknife. Boers searched the defendant's left pants pocket and pulled out money and business cards. Boers then said, "What is this?" Boers moved his foot and looked down on the ground. The defendant looked and saw a piece of plastic with a white substance in it. The defendant said he did not know what it was, and Boers said, "[Y]ou're not going to say I dropped it." The defendant, who had his hands behind his back, said, "[Y]ou know I didn't drop it." The defendant further testified that he had never seen before the piece of plastic with the white substance. The defendant did not notice whether the plastic baggie was on the ground before he was searched or whether it was dropped to the ground by someone else.

Boers said, "[Y]ou had better hope that it doesn't come back positive." Boers then handed the substance to the third officer who was present, Deputy Schumacher. That officer took the substance to another police vehicle that had arrived. Boers then told the defendant to sit in the back of his police car, and Boers asked the defendant if he knew any drug dealers or if he had any information regarding any murders or guns. Boers also told the defendant that he knew the defendant was a drug dealer and that the defendant had been previously charged with a crime involving heroin. The defendant testified that he had never had any dealings with heroin and that he did not know to what Boers was referring. Approximately 15 minutes later, Schumacher opened the door of the police vehicle and sat in the back next to the defendant. Schumacher told Boers, "[I]t came back blue." Boers told the defendant that he was facing possession charges and transported the defendant to the Will County jail.

At the jail, another police officer told the defendant that Boers wanted him to sign a paper

4

that stated the defendant had possessed over 30 grams of heroin. The defendant told the officer that he did not know anything about heroin and the officer told him he did not have to sign the paper.

In rebuttal, the State presented the testimony of Deputy Schumacher. Schumacher testified that on March 3, 3006, at approximately 7:45 p.m., he was on patrol with Boers and Buck. Schumacher testified that the officers were parked in a parking lot and ran the license plates of a vehicle. The vehicle was registered to the defendant, whose driver's license was suspended. Boers was driving the police vehicle, and he pulled over the defendant in a grocery store parking lot. Schumacher testified that Boers approached the vehicle while the defendant was still seated inside. Boers asked the defendant for his driver's license and confirmed that the license was suspended. Boers then asked the defendant to step out of his vehicle. Boers patted down the defendant and then searched the defendant's pocket. Schumacher observed Boers pull a white substance out of the defendant's pocket. Schumacher did not see Boers retrieve anything from the ground or drop anything on the ground. Schumacher testified that he never took possession of the white substance and did not test the substance. Schumacher also testified that he believed that the defendant was handcuffed after he was searched. Schumacher testified that he did not believe that Buck searched the defendant.

Following Schumacher's testimony, the Stated presented its closing argument. The prosecutor first summarized the testimony of Sergeant Boers. At the conclusion of this summary, the prosecutor stated that Boers's memory of the events surrounding the defendant's arrest was clear and that Boers "generated a report on this matter shortly after this stop." In addition, the prosecutor stated, "So what Deputy Boers told you today from the stand is what he stated

5

happened two years ago. He locked himself in to his version of events when he wrote his report shortly thereafter; that is what he testified to." A little later in his argument, the prosecutor stated, "The defendant, on the other hand, he got up and testified today. He has had two years, a little over two years to come up with his story that he's going to tell you." In addition, the prosecutor argued:

"I have no idea what the defendant is going to say before this trial starts, and that is why I say again, I go back to when I prefaced my opening statements with I think this is what the evidence would show because I don't know what the defendant is going to say.

Based on what he said, I brought in an additional witness."

Later in his argument, the prosecutor stated:

"The defense is based simply on the defendant's story that he told you on the stand and a typo on a booking sheet. That is their defense.

What did the State have? We have an eight and a half year veteran of the Will County Sheriff's Department telling you that he searched the defendant, that he found the cocaine on him, that he field tested it, and he sealed it.

* * *

What this case is going to come down to, ladies and gentlemen, is credibility. Who do you believe? Do you believe the eight and a half year veteran of the Will County Sheriff's Department, the five year veteran of the forest preserve police, or do you believe the defendant who had almost two and a half years to come up with the story he told you today.

6

\* \* \*

What also doesn't make sense is that Deputy Boers would plant these drugs on the defendant. We are talking about 0.8 grams of cocaine. If you believe what the defendant is saying, then you also have to believe that Deputy Boers is risking his credibility, his job, and his freedom over 0.8 grams of cocaine.

And not only is Deputy Boers doing that, but Officer Schumacher is doing that as well. He's also risking his life– his job and his freedom and his reputation over 0.8 grams of cocaine."

In the State's rebuttal argument, the prosecutor stated:

"The only reason I called Deputy Schumacher is because the defendant took the stand and he gave you a cockamamie story about what he said went down, a story he created two and a half years later, that he had two and a half years to come up with, that if you look at and you say, is this reasonable, that's not reasonable.

Again you have got to buy one of two theories that the defense is throwing at you. Either this was a set up and these officers are risking their jobs for this, over 0.8 grams of cocaine because they were just looking to make a bust that night, or that he's the unluckiest man alive."

ANALYSIS

On appeal, the defendant contends that the prosecutor committed reversible error during closing arguments. The defendant acknowledges that this issue has been forfeited because he did not object to any of the prosecutor's statements during trial or raise the issue in a posttrial

motion. However, he maintains that this issue may be reviewed under both prongs of the plain error doctrine.

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). "The plain-error doctrine does not instruct a reviewing court to consider all forfeited errors." People v. Herron, 215 Ill. 2d 167, 177, 830 N.E.2d 467, 474 (2005). A reviewing court will reach a forfeited error affecting substantial rights in two circumstances. Herron, 215 Ill. 2d at 178, 830 N.E.2d at 475. First, the court may consider a forfeited error "where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence." Herron, 215 Ill. 2d at 178, 830 N.E.2d at 475. Second, a reviewing court may consider a forfeited error "where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." Herron, 215 Ill. 2d at 179, 830 N.E.2d at 475. The first step in any plain error analysis is to determine whether clear or obvious error occurred. People v. Piatkowski, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 410-11 (2007). To determine whether error occurred requires a substantive look at the issue. People v. Naylor, 229 Ill. 2d 584, 593, 893 N.E.2d 653, 660 (2008).

First, the defendant claims the prosecutor engaged in misconduct when he stated that Boers and Schumacher were risking their credibility, reputation, jobs and freedom if they had somehow planted the drugs or otherwise set up the defendant. The defendant contends that the prosecutor, when making these statements, referred to matters that were outside the evidence produced at trial and impermissibly bolstered the witnesses' credibility. The State claims that the prosecutor's statements were based on the evidence or were reasonable inferences therefrom. In addition, the State argues that the prosecutor's statements did not improperly bolster the

8

witnesses' credibility.

The defendant specifically complains of the following comments:

"What also doesn't make sense is that Deputy Boers would plant these drugs on the defendant. We are talking about 0.8 grams of cocaine. If you believe what the defendant is saying, then you also have to believe that Deputy Boers is risking his credibility, his job, and his freedom over 0.8 grams of cocaine.

And not only is Deputy Boers doing that, but Officer Schumacher is doing that as well. He's also risking his life– his job and his freedom and his reputation over 0.8 grams of cocaine."

In addition, during rebuttal argument the prosecutor stated that the defense wanted the jurors to believe that "these officers are risking their jobs for this, over 0.8 grams of cocaine."

"Prosecutors are afforded wide latitude in closing argument." People v. Wheeler, 226 Ill. 2d 92, 123, 871 N.E.2d 728, 745 (2007). "[C]losing arguments must be viewed in their entirety, and the challenged remarks must be viewed in context." Wheeler, 226 Ill. 2d at 122, 871 N.E.2d at 745. Generally, it is improper for a prosecutor to vouch for the credibility of a witness or to express a personal opinion on a case. People v. Emerson, 122 Ill. 2d 411, 434, 522 N.E.2d 1109, 1118 (1987). Counsel may comment on the credibility of witnesses if the comments are based on the evidence or inferences drawn from the evidence. People v. Flores, 128 Ill. 2d 66, 94, 538 N.E.2d 481, 492 (1989).

One line of appellate court cases state that a prosecutor may not argue that a witness is more credible because of his status as a police officer. People v. Gorosteata, 374 Ill. App. 3d 203, 219, 870 N.E.2d 936, 950 (2007). Courts have recognized "various permutations of

9

arguments extolling an officer's experience, or asserting that an officer would not lie merely to convict a particular defendant, as falling afoul of the aforementioned rule." Gorosteata, 374 Ill. App. 3d at 219, 870 N.E.2d at 950, citing People v. Fields, 258 Ill. App. 3d 912, 920-21, 631 N.E.2d 303, 308-09 (1994); People v. Clark, 186 Ill. App. 3d 109, 115-16, 542 N.E.2d 138, 142-43 (1989); People v. Rogers, 172 Ill. App. 3d 471, 476-77, 526 N.E.2d 655, 660 (1988); People v. Ford, 113 Ill. App. 3d 659, 661-62, 447 N.E.2d 564, 566-67 (1983). See also People v. Montgomery, 254 Ill. App. 3d 782, 795, 626 N.E.2d 1254, 1263 (1993) (concluding that the prosecutor's statements were improper because they invited the jury to believe that the State's witnesses were more trustworthy because of their status). In Gorosteata, the First District Appellate Court concluded that a prosecutor's statements were improper, where the prosecutor stated that the issues in that case had " 'been resolved by the credible testimony of officers with years of experience' " and "twice inquired what motivation the police would have had to falsely 'pin' criminal charges on defendant, with whom they had no prior contact or 'beef.' " Gorosteata, 374 Ill. App. 3d at 220, 870 N.E.2d at 950.

Likewise, in Ford, 113 Ill. App. 3d at 662, 447 N.E.2d at 567, a panel of this court determined that the prosecutor's statements were "an improper attempt to enhance the credibility of his witness." In that case, the prosecutor made several references during closing argument to the witness's status as a sworn police officer and posed the question of why the officer would " 'pull a charade like this and lie and perjure herself for a lousy 15 gram purchase of marijuana.' " Ford, 113 Ill. App. 3d at 661-62, 447 N.E.2d at 566-67. The Ford court reasoned that a police officer's testimony must be evaluated as that of any other witness, and there is no presumption that an officer's testimony is more truthful and credible than that of any other witness. Ford, 113

10

Ill. App. 3d at 662, 447 N.E.2d at 567, citing <u>Crook v. Crook</u>, 329 Ill. App. 588, 70 N.E.2d 209 (1946).

The State, however, points to another line of cases wherein courts found no error when presented with similar statements. See <u>People v. Bennett</u>, 304 Ill. App. 3d 69, 710 N.E.2d 445 (1999); <u>People v. Killen</u>, 217 Ill. App. 3d 473, 577 N.E.2d 560 (1991); <u>People v. Thomas</u>, 172 Ill. App. 3d 172, 526 N.E.2d 467 (1988). See also <u>People v. Myers</u>, 246 Ill. App. 3d 542, 616 N.E.2d 633 (1993). In <u>Bennett</u>, the Second District declined to follow the reasoning of the <u>Ford</u> court. <u>Bennett</u>, 304 Ill. App. 3d at 72-73, 710 N.E.2d at 447-48. Rather, the <u>Bennett</u> court concluded that the prosecutor's statements were not improper where the prosecutor posed the questions of what motive two police officers would have to lie and plant evidence against the defendant and why they would risk their careers to do so. <u>Bennett</u>, 304 Ill. App. 3d at 71-73, 710 N.E.2d at 447-48. Similarly, in <u>Killen</u>, the Fourth District held that similar comments made by a prosecutor during closing arguments "may have in fact enhanced [the officer's] credibility, but there was nothing unfair about them." <u>Killen</u>, 217 Ill. App. 3d at 479-82, 577 N.E.2d at 564-66.

In <u>Myers</u>, decided 10 years after <u>Ford</u>, a different panel of this court cited <u>Killen</u> when it concluded that the prosecutor's statements in that case were proper. <u>Myers</u>, 246 Ill. App. 3d at 547, 616 N.E.2d at 637.[1] The prosecutor in <u>Myers</u> stated:

" 'This is a big set up, all the police are lying. I submit to you they were not lying. They told you the truth. This incident happened relatively quickly.

_____

[1] Thus, there is a split of authority on this issue in our district. <u>Myers</u> did not overrule <u>Ford</u> because one panel of the appellate court has no authority to overrule another panel. <u>In re Marriage of Gutman</u>, 232 Ill. 2d 145, 149-50, 902 N.E.2d 631, 633 (2008).

11

These were officers with two to three years' experience on the force.  You have to

weigh the credibility of each witness that testified.

\* \* \*

There was no conspiracy here.  There was no make-believe story on the

part of the police.  They recovered the items.  They told you what happened, they

testified truthfully.  They had no reason to come in here and lie.' " Myers, 246 Ill.

App. 3d at 546, 616 N.E.2d at 637.

Myers did not discuss or cite this court's previous decision in Ford.

As the above discussion of the case law indicates, Illinois courts are divided over whether

statements concerning an officer's status and the possible repercussions of an officer's alleged lie

are permissible.  Those cases finding such statements permissible conclude that the statements

were proper comments on the credibility of witnesses that were based on the evidence or

inferences drawn from the evidence.  Killen, 217 Ill. App. 3d at 481-82, 577 N.E.2d at 565-66;

Myers, 246 Ill. App. 3d at 547, 616 N.E.2d at 637; Bennett, 304 Ill. App. 3d at 73, 710 N.E.2d at

448.  In contrast, those cases finding such statements improper determine that those statements

are attempts to bolster the credibility of the police officer witnesses due solely to their status as

police officers.  Gorosteata, 374 Ill. App. 3d at 220, 870 N.E.2d at 951; Clark, 186 Ill. App. 3d at

115-16, 542 N.E.2d at 142-43; Ford, 113 Ill. App. 3d at 662, 447 N.E.2d at 567; Fields, 258 Ill.

App. 3d at 921, 631 N.E.2d at 309; Montgomery, 254 Ill. App. 3d at 795, 626 N.E.2d at 1263.

We agree with Gorosteata and Ford that a prosecutor's comments on a witness's status as

a police officer and the repercussions to such a witness if he were to lie are impermissible

statements seeking to bolster the officer's credibility as a witness solely because he is a police

12

officer. Courts in Illinois have long recognized that a person is not more truthful because he or she chooses the profession of a police officer. Crook, 329 Ill. App. at 598, 70 N.E.2d at 213. It is improper, then, for a prosecutor to invite a jury to believe a witness's testimony because that witness was a police officer and, thus, would not lie.

Further, we disagree with Killen that the position adopted in Ford is inconsistent with the court's holding in Flores. Killen, 217 Ill. App. 3d at 481, 577 N.E.2d at 565. In Flores, the court held that a prosecutor's comments that a non-police-officer witness's testimony was unrebutted and corroborated by another witness were permissible because those comments were an accurate summary of the evidence. Flores, 128 Ill. 2d at 94-95, 538 N.E.2d at 492. In Ford, and the subsequent cases cited above, the prosecutors' comments went beyond summarizing the evidence and invoked the belief that the witnesses did not lie because they were police officers. Ford, 113 Ill. App. 3d at 662, 447 N.E.2d at 567; Gorosteata, 374 Ill. App. 3d at 220, 870 N.E.2d at 951; Clark, 186 Ill. App. 3d at 115-16, 542 N.E.2d at 142-43; Fields, 258 Ill. App. 3d at 921, 631 N.E.2d at 309; Montgomery, 254 Ill. App. 3d at 795, 626 N.E.2d at 1263.

In this case, the prosecutor referred twice to Boers's status as an 8 ½-year veteran police officer and once to Schumacher's status as a 5-year veteran police officer when discussing the strength of the State's case and the jury's job to assess the credibility of these witnesses. In addition, on three occasions, the prosecutor commented that the officers risked their jobs, their freedom and their reputations over 0.8 grams of cocaine if they had lied about finding the cocaine in the defendant's pocket. These statements were an attempt by the prosecutor to bolster these witnesses' testimony by suggesting "that they were incapable, as a result of their chosen profession, from lying." Gorosteata, 374 Ill. App. 3d at 220, 870 N.E.2d at 951. Thus, we

13

conclude that these statements were impermissible. Ford, 113 Ill. App. 3d at 662, 447 N.E.2d at 567; Gorosteata, 374 Ill. App. 3d at 220, 870 N.E.2d at 951; Clark, 186 Ill. App. 3d at 115-16, 542 N.E.2d at 142-43; Fields, 258 Ill. App. 3d at 921, 631 N.E.2d at 309; Montgomery, 254 Ill. App. 3d at 795, 626 N.E.2d at 1263.

In addition, we conclude that the defendant was prejudiced by this error as the evidence in this case was closely balanced. See Herron, 215 Ill. 2d at 178, 830 N.E.2d at 475. The jurors were required to assess the credibility of the police officers and the defendant in order to determine whether the defendant possessed cocaine. The testimony of the officers was the only evidence presented to the jury that the cocaine was found in the defendant's pocket; there was no physical evidence linking the cocaine to the defendant. The defendant, however, testified that he did not have cocaine in his pocket that night and that the cocaine was found on the ground near Boers' foot. Thus, the resolution of this case hinged upon the jury's determination of the witnesses' credibility. Under these facts, we believe the evidence was closely balanced. See People v. Naylor, 229 Ill. 2d 584, 605-11, 893 N.E.2d 653, 667-70 (2008) (concluding that evidence was closely balanced where only evidence was the testimony of two police officers and the defendant). "Where there is error in a close case, we choose to err on the side of fairness, so as not to convict an innocent person." Herron, 215 Ill. 2d at 193, 830 N.E.2d at 483. Because the evidence produced at trial was closely balanced, we conclude that the prosecutor's improper statements prejudiced the defendant. Thus, we reverse the defendant's conviction and remand for a new trial.

Although we have reversed the defendant's conviction, we address the defendant's other arguments because the issues may arise upon remand. People v. Fuller, 205 Ill. 2d 308, 346, 793

14

N.E.2d 526, 550 (2002).  The defendant makes two claims of error regarding the following comments:

> "So what Deputy Boers told you today from the stand is what he stated happened two years ago.  He locked himself in to his version of events when he wrote his report shortly thereafter; that is what he testified to.
>
> * * *
>
> The defendant, on the other hand, he got up and testified today.  He has had two years, a little over two years to come up with his story that he's going to tell you.
>
> * * *
>
> I have no idea what the defendant is going to say before this trial starts, and that is why I say again, I go back to when I prefaced my opening statements with I think this is what the evidence would show because I don't know what the defendant is going to say.
>
> * * *
>
> *** [O]r do you believe the defendant who had almost two and a half years to come up with the story he told you today."

And during rebuttal, the prosecutor stated:

> "The only reason I called Deputy Schumacher is because the defendant took the stand and he gave you a cockamamie story about what he said went down, a story he created two and a half years later, that he had two and a half years to come up with, that if you look at and you say, is this reasonable, that's not

15

reasonable."

The defendant claims that the prosecutor's reference to the police report authored by Boers was impermissible. The State, on appeal, admits that this reference was error. We agree. In closing argument, the prosecutor may argue "fair and reasonable inferences that can be drawn from the evidence introduced at trial." People v. Porter, 372 Ill. App. 3d 973, 978, 866 N.E.2d 1249, 1254 (2007). However, the prosecutor "may not 'argue assumptions or facts not based upon the evidence in the record.' " Porter, 372 Ill. App. 3d at 978, 866 N.E.2d at 1254, quoting People v. Johnson, 208 Ill. 2d 53, 115, 803 N.E.2d 405 (2003).

In this case, the prosecutor referred twice in closing argument to a report supposedly written by Boers following the defendant's arrest. There was no evidence produced at trial, for any reason, that this report had been written. The only evidence the jury ever heard that Boers had written a report was given by the prosecutor in his closing argument. This was error. Further, the prosecutor's comments regarding Boers's report appear to have been made in an effort to bolster Boers's testimony by referring to an allegedly prior consistent statement. This, too, was impermissible. See People v. McWhite, 399 Ill. App. 3d 637, 640-43, 927 N.E.2d 152, 156-58 (2010).

The State claims that this error was de minimus. We have concluded, however, that the evidence in this case was so closely balanced that the jury's verdict may have resulted from the prosecutor's errors rather than the evidence. Herron, 215 Ill. 2d at 178, 830 N.E.2d at 475. Thus, the prosecutor's references to the police report were actually prejudicial to the defendant, and constitute plain error. Herron, 215 Ill. 2d at 193, 830 N.E.2d at 483. In this situation, we cannot find that the error was de minimus. People v. Belknap, 396 Ill. App. 3d 183, 207, 918

16

N.E.2d 1233, 1254-55 (2009); see also People v. Lewis, 234 Ill. 2d 32, 912 N.E.2d 1220 (2009) (no de minimus exception to second prong of plain error review).

Next, the defendant maintains that the prosecutor's comments that the defendant had 2 ½ years to come up with his version of the events leading to his arrest were an impermissible comment on the defendant's pretrial silence. The State argues that the prosecutor's statements did not suggest that the defendant had remained silent following his arrest. The State contends that the prosecutor's statements were permissible comments on the inconsistencies between the testimony of the officers and the defendant and were an explanation of why the prosecutor called Schumacher to testify. The defendant does not argue that the prosecutor's statement was impermissible for any other reason. Thus, we limit our consideration of the propriety of this statement to whether the prosecutor's statement was an impermissible comment on the defendant's silence.

" '[U]nder Illinois evidentiary law, it is impermissible to impeach a defendant with his or her post-arrest silence, regardless of whether the silence occurred before or after the defendant was given Miranda warnings.' " People v. Sanchez, 392 Ill. App. 3d 1084, 1096, 912 N.E.2d 361, 371 (2009), quoting People v. Clark, 335 Ill. App. 3d 758, 763, 781 N.E.2d 1126, 1130 (2002); see also Doyle v. Ohio, 426 U.S. 610, 619, 49 L. Ed. 2d 91, 98, 96 S. Ct. 2240, 2245 (1976) (holding that use of defendant's silence after receiving Miranda warnings violated due process). However, "[i]f a defendant's trial testimony is inconsistent with statements made to the police, the prosecution may impeach his trial testimony by using his failure to give the same statements to the police." People v. Ridley, 199 Ill. App. 3d 487, 493, 557 N.E.2d 378, 382 (1990); see also People v. Frieberg, 147 Ill. 2d 326, 355-56, 589 N.E.2d 508, 521-22 (1992)

17

(concluding that no Doyle violation occurred where defendant's post-Miranda statement to police was "markedly different," including the omission of significant details, from his testimony at trial). This same exception to the general rule that a prosecutor may not present evidence of a defendant's postarrest silence finds expression in Doyle,

> "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest." Doyle, 426 U.S. at 619 n.11, 49 L. Ed. 2d at 98 n.11, 96 S. Ct. at 2245 n.11.

In this case, the jury was presented with two conflicting versions of events leading to the defendant's arrest for unlawful possession of a controlled substance. The defendant testified at trial that the cocaine was found on the ground, and he told Boers that he had not dropped the drugs. Boers and Schumacher testified, however, that Boers found the cocaine in the defendant's pocket. The prosecutor's comments in closing argument that the defendant had not told anyone his version of events in the 2 ½ years between his arrest and the trial were permissible comments on the witnesses' widely divergent testimonies. Here, the defendant's testimony that he told the officers at the time of his arrest that he did not drop the drugs on the ground and did not see them there before he was searched, differs substantially from the officers' testimony about his actions at that time. We believe that this situation is more analogous to Frieberg, 147 Ill. 2d at 355-56, 589 N.E.2d at 521-22, where the defendant made a statement to police at his arrest and then

18

testified inconsistently with that statement, than to a situation where a defendant remained silent postarrest (People v. Adams, 102 Ill. App. 3d 1129, 1133, 430 N.E.2d 267, 271 (1981)) or made a general denial of guilt and then testified as to a specific defense (Ridley, 199 Ill. App. 3d at 493, 557 N.E.2d at 382). Although the prosecutor's statements were comments on defendant's silence, they "challenge the defendant's testimony as to his behavior after the arrest." Doyle, 426 U.S. at 619, 49 L. Ed. 2d at 98, 96 S. Ct. at 2245. Under the unique facts of this case, we conclude that the prosecutor's statements were permissible.

Finally, we note that while we have found the evidence was closely balanced for purposes of the plain error doctrine, we also conclude that the evidence presented was sufficient to find the defendant guilty beyond a reasonable doubt. "Whether the evidence is closely balanced is, of course, a separate question from whether the evidence is sufficient to sustain a conviction on review against a reasonable doubt challenge." People v. Piatkowski, 225 Ill. 2d 551, 566, 870 N.E.2d 403, 411 (2007). Thus, double jeopardy does not bar retrial of the defendant. People v. Hernandez, 231 Ill. 2d 134, 152, 896 N.E.2d 297, 309 (2008).

CONCLUSION

The prosecutor erred when he bolstered the police officers' testimony by commenting during closing argument that the officers would not risk their jobs and reputations for 0.8 grams of cocaine. The prosecutor also erred by referring in closing argument to Boers's police report. In addition, the evidence presented at trial was closely balanced. Thus, we conclude that these errors prejudiced the defendant, reverse the defendant's conviction, and remand for a new trial.

Reversed and remanded.

LYTTON and O'BRIEN, J. J. concurring.

19